UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————X

LEVAR T. HENRY,

                     Plaintiff,

     -against-

CITY OF NEW YORK, POLICE OFFICER GARY PEREZ,
SHIELD #27357, in his individual capacity;
POLICE OFFICER RANDYS FIGUEREO, SHIELD #19407,
in his individual capacity; POLICE OFFICER
JUAN CARREREO, SHIELD #00160, in his individual
capacity; POLICE OFFICER CARLOS PIMENTEL,
SHIELD #07608, in his individual capacity;
POLICE OFFICER CARLOS THOMAS, SHIELD #21295, in
his individual capacity; LIEUTENANT CHRISTAIN
HERNANDEZ, of TRANSIT BUREAU DISTRICT 11, in his
official and individual capacity,

                  Defendants.

———————————————————————————X

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

17-CV-03450 (JGK)(SDA)

11/8/18

## PLAINTIFF'S SECOND AMENDED COMPLAINT

     Plaintiff Levar T. Henry, for his second amended complaint against defendants City of New York, Police Officer Gary Perez, Police Officer Randys Figuereo, Police Officer Juan Carrero, Police Officer Carlos Pimentel, Police Officer Carlos Thomas, Lieutenant Christain Hernandez, alleges as follows:

### PRELIMINARY STATEMENT

     1. This is a civil rights action brought under 42 U.S.C. § 1983 concerning the actions of defendant New York City Police Officers Gary Perez, Randys Figuereo, Juan Carrero, Carlos Pimentel, Carlos Thomas, and New York City Police Lieutenant Christain Hernandez in racially profiling, unlawfully arresting, illegally searching, taking of property, using excessive and unreasonable force, fabrication of legal documents and testimony under oath against plaintiff Levar T. Henry. The actions and extraordinary misconduct of defendant officers and lieutenant are the result of failure to train City employees in relevant respect to the level of City policy or custom under § 1983, this failure to train must amount to deliberate indifference to rights of person with whom these untrained employees come into contact. By failure to adequately supervise or discipline officers who use excessive and unreasonable force, steal property and lie about it, thus embolding such behavior. A failure to investigate

or reprimand might also cause a future violation by sending a message to officers that such behavior is tolerated. Pattern of similar constitutional violations by untrained City of New York employees is ordinarily liable on failure-to-train theory under 42 U.S.C. § 1983, on the part of defendant City of New York.

2. As a result of the defendants' pervasive unconstitutional conduct, Plaintiff Mr. Levar T. Henry is incarcerated.

3. Plaintiff Levar T. Henry now brings this action under 42 U.S.C. § 1983 to seek redress for the violations of his rights and the significant damages he suffered.

### JURISDICTION

4. This Court has jurisdiction over the subject matter of this second amended complaint ("Complaint") under 42 U.S.C. § 1983 and 28 U.S.C. § 1331 and § 1343(a)(3).

### PARTIES

5. Plaintiff Levar T. Henry, age 40, is and was at all times relevant to this Complaint born and a resident of New York, New York. Plaintiff is now a prisoner in Franklin Correctional Facility, 62 Bare Hill Road, PO Box 10, Malone, NY 12953-0010.

6. Defendant City of New York is a municipality in New York State and owns, operates, manages, directs, and controls the New York City Police Department (NYPD), which employs defendants Police Officer Gary Perez, Police Officer Randys Figuereo, Police Officer Juan Carrero, Police Officer Carlos Pimentel, Police Officer Carlos Thomas, and Lieutenant Christain Hernandez.

7. Defendant Police Officer Gary Perez, Shield #27357, NYPD, Housing Bureau Police Service Area (PSA) 6, 2770 8th Ave., New York, NY 10039 (during incident); now also known as Shield #5365, One Police Plaza, Room 1200, New York, NY 10038, is and was at all times relevant to this Complaint an officer in the New York City Police Department. He is sued in his individual capacity.

8. Defendant Police Officer Randys Figuereo, Shield #19407, NYPD, Housing Bureau Police Service Area (PSA) 6, 2770 8th Ave., New York, NY 10039 (during incident); now also known as Shield #2994, 32nd Precinct, 250 W. 135th Street, NY, NY 10030, is and was at all times relevant to this Complaint an officer in the NYPD. He is sued in his individual capacity.

9. Defendant Police Officer Juan Carrero, Shield #00160; now also known as Shield #130, NYPD, Housing Bureau Police Service Area (PSA) 6, 2770 8th Ave., New York, NY 10039, is and was at all times relevant to this Complaint an officer in the NYPD. He is sued in his individual capacity.

10. Defendant Police Officer Carlos Pimentel, Shield #07608, NYPD, Housing Bureau Police Service Area (PSA) 6, 2770 8th Ave., New York, NY 10039, is and was at all times relevant to this Complaint an officer in the NYPD (New York City Police Department). He is sued in his individual capacity.

11. Defendant Police Officer Carlos Thomas, Shield #21295, NYPD, Housing Bureau Police Service Area (PSA) 6, 2770 8th Ave., New York, N.Y. 10029, is and was at all times relevant to this Complaint an officer in the NYPD. He is sued in his individual capacity.

12. Defendant Lieutenant Christain Hernandez, NYPD, Transit Bureau District 11, 161st Street and River Avenue, Bronx, New York 10451, is and was at all times relevant to this Complaint a lieutenant officer in the NYPD. He is sued in his official capacity and individual capacity.

13. At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to plaintiff.

14. At all times relevant to this Complaint, all defendants acted under color of state law.

<h3 style="text-align:center">FACTUAL ALLEGATIONS</h3>

15. On August 18,2016, at or about 9:00pm Plaintiff Levar T. Henry (HENRY) circled his neighborhood looking for a parking space; upset about the bumper to bumper, lack of space and decline of gas while searching the plaintiff played his music loudly. Plaintiff parked his 2008 CHEVROLET SUBURBAN LTZ 1500 (large SUV) on West 154th Street between Macombs Place and 8th Avenue.

16. Plaintiff lives at 272 W.154th Street, New York, NY 10039, with his wife and six children. The building is located between Macombs Pl. and 8th Avenue.

17. Due to prior racial profiling issues with the NYPD, stop and frisk, fabricated report complaints, fabricated traffic violation reports, false car accident reports,

car vandalism (break in), and parking lot security plaintiff installed two (2) mini infra-red night vision dash cameras (cams) in his vehicle (Title and Identification #1GNFK16378R259076: Vehicle Identification Number).(EXHIBIT A)

18. These audio/video dash cams sat attached between the windshield and rearview mirror, above the dash board, for surveillance of the front. The second sat attached by suction cup to the back factory tinted back window. Both cams contained 32GB SD memory cards. They remained plugged, although rechargeable; therefore, they (cams) remain on for video surveillance when plaintiff is driving or not.(EXHIBIT A)

19. On August 18,2016 after parking his SUV inside of West 154th Street, Manhattan, New York the Plaintiff Mr. HENRY is ambushed, knocked out, attacked, and degraded by three individuals. Plaintiff wakes up after the first attack and learns these individuals are Housing Bureau Police Service Area (PSA) 6 defendant officers RANDYS FIGURERO, GARY PEREZ, and JUAN CARRERO. Plaintiff was beaten and sodomized. Plaintiff is illegally arrested and further violated inside Housing Bureau PSA 6 station house.

20. On August 18,2016, Both video surveillance cams were recording from plaintiff's vehicle (SUV) during this incident and violation of plaintiff's Civil Rights.

21. August 18,2016, as a result of police brutality, plaintiff is put into Harlem Hospital Emergency room. (EXHIBIT B)

22. Plaintiff's wife (Ladonna D. Henry) and children observe him being wheelchaired out of PSA 6. Plaintiff had to sit sideways due to anal pain. Ladonna D. Henry ask FDNY EMS (New York City Fire Department's Emergency Medical Service) what hospital will Mr. Henry be taken and FDNY EMS state they cannot tell her. Plaintiff advises his wife to get the keys to his SUV, that is when Ladonna D. Henry advises PSA 6 (Housing Bureau Police Service Area 6, NYPD) desk officer told her plaintiff's SUV is "Evidence" and the keys to plaintiff's SUV could not be turned over to her. The desk officer got this information from the arresting officer defendant GARY PEREZ.

23. On August 18,2016, the FDNY EMT's that spoke to LADONNA D. HENRY are ROBERT LYNCH and KYLE KLEB.

24. On August 18,2016, LADONNA D. HENRY calls IAB (Internal Affairs Bureau) and starts

4

complaint.

25. At or about 10:00am, August 19,2016, plaintiff is released from Harlem Hospital Center. Police Officers take plaintiff and EDWARD GOLDFADEN back to PSA 6 to be photographed and finger printed. At this time MR. HENRY did not know who EDWARD GOLFADEN was but came to know him (GOLDFADEN) as the other man arrested about 25 feet ahead of where plaintiff was ambushed, knocked unconscious and sodomized. GOLDFADEN had been sent to Harlem Hospital Center for x-rays. The x-rays of GOLDFADEN's insides for contraband were negative.

26. At or about 10:00am, August 19,2016, defendants GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, or HERNANDEZ are nowhere to be found; moreover, the keys to plaintiff's SUV are nowhere to be found. (EXHIBIT B)

27. On or about August 19,2016, plaintiff meets court appointed attorney PERCY DIEGO GAYANILO (18B). Plaintiff informs the attorney that he would like to testify before a Manhattan (New York County) Grand Jury. Plaintiff knew his Civil Rights were violated. Plaintiff advises GAYANILO of witnesses on the scene, witnesses who called 911 for FDNY EMS at the scene, video surveillance captured from HENRY's SUV and neighbor's; FDNY EMT (LYNCH and KLEB), that wheelchair HENRY (plaintiff) from the police car in restraints (ankles/rear handcuff) into Housing Bureau PSA 6 jail cell; and out to Harlem Hospital.

28. Plaintiff was discharged from Harlem Hospital Center, 506 Lenox Avenue, New York, NY 10037, prematurely. Sharpness in Mr. HENRY's vision was absent. His anal bled and in the following days a scabby anal made it even more impossible to sleep, sit, and defecate. These injuries were abnormal. Plaintiff's head injuries were deeper than the surface wombs; he feared raising his head from laying down for several weeks to months because the room would not stop spinning. Headaches would not go away. Back pain abnormal. Plaintiff's metal health was abnormal. He bled and smelled it from knees, elbows, wrist, shoulders, ankles, thighs, anal area and head for over 50 days. Plaintiff was rushed to Manhattan Detention Center clinic multiple times due to his injuries. Sometimes he got attention he needed, but most of the time he did not. (EXHIBIT B)

29. Plaintiff believes since he was a prisoner of NYPD Housing Bureau PSA 6 his care

was limited. Every time the staff would ask, "who did this?", or "What happened?",
they would act less concerned about plaintiff once he answered, "Police". Harlem
Hospital released HENRY prematurely. There was mixed emotion and care regarding staff
that treated him. Due to his detainee status he was released prematurely. Getting
HENRY to court was more important than his health. The pain medication wore off before
HENRY seen the judge on or about August 19,2016. Mr. HENRY could barely stand before
the Court. He also noticed and felt the pain of a tooth that had been cracked and was
later removed. HENRY revisits this degrading attack via nightmares.

30. Plaintiff is interviewed by IAB (INTERNAL AFFAIRS BUREAU) at Manhattan Detention
Center (MDC), 125 White Street, New York, NY 10013. This is on or about August 23,2016,
when HENRY (the plaintiff) picks defendants RANDYS FIGUEREO and GARY PEREZ of PSA 6 out
of a photo line up sheet. Moreover, he explains to IAB his bleeding scars on head, wrist,
legs and ankles (from the leg shackles placed on him before he was wheeled into PSA 6).
The IAB investigators advise him they are not allowed to take photos anymore. IAB informs
plaintiff of his wife's call and they would investigate the incident.

31. On or about August 24,2016, plaintiff appears with attorney GAYANILO. Plaintiff
informs the court by raising his hand to ask the judge could he testify before the
MANHATTAN GRAND JURY (100 Centre Street, New York, NY 10013). The Judge informs HENRY
and GAYANILO, "2nd call". Plaintiff is never produced again for the "2nd call" promised
to him. (EXHIBIT C)

32. Plaintiff never enters another New York County court room until September 19,2016
(Part 23). HENRY is indicted for a charge he was never arrested for (Criminal Possession
of a Controlled Substance in the 3°, which is intent to sale; "Direct proof of intent to
distribute [sale] can come from many sources, in particular the defendant's words (a
expression intention) or actions (police witnessing a series of sales before arresting
the suspect, who is then found to possess additional amounts of drugs packaged for sale)";
and GAYANILO waived plaintiff's Grand Jury appearance/request. Accordingly, it breeds
conflict between HENRY and GAYANILO. Plaintiff had already made statements to IAB and
mailed out a notarized PERSONAL INJURY CLAIM FORM to NEW YORK CITY COMPTROLLER'S OFFICE

6

(Claim No. 2016PI028447).(EXHIBIT D)

33. Plaintiff did not understand why PERCY DIEGO GAYANILO did not want to put evidence before the GRAND JURY. The only response(s) plaintiff got was, "You got a violent history". Plaintiff felt the GRAND JURY did not believe defendant police officers PEREZ and FIGUEREO. Mr. HENRY did not know what VIDEO (evidence) had to do with history. No GRAND JURY indictment on Criminal Possession of a Controlled Substance in the 3° (with Intent to Sale). The case should have been dismissed. It appeared to plaintiff that he was going against a machine. A machine that wanted to cover sodomy, police brutality, and evidence. "Manhattan Grand Jury would indict a ham sandwich", "Manhattan Courts are different", "This is Manhattan!!!", and "I've been working here 15 years", expressed defense attorney GAYANILO. Everything was negative. Plaintiff noticed that he was being railroaded by the machine called CITY OF NEW YORK his attorney was an employee of. The Manhattan plaintiff knew was not corrupt. His Manhattan protected the peoples rights (CONSTITUTIONAL BIRTH RIGHTS). (EXHIBIT C)

34. Plaintiff's next court date was pushed to December 12,2016. GAYANILO did not show. (EXHIBIT D)

35. September 9,2016. Personal Injury Claim Form, page 2: "CLAIMANT WAS SEXUALLY ASS[a]ULTED AND BEATEN BY OFFICERS OF HOUSING BUREAU PSA6. AFTER CLAIMANT EXITED HIS CAR A[nd] BEGAN TO WALK TOWARD THE MIDDLE OF WEST 154th A GRAY SMALL CAR STOPS[,] A LIGHTSKIN MALE JUMPS OUT AND BEGINS TO REACH FOR HIS (CLAIMANTS) HEAD AND BEGINS PUSHING IT INTO THE WALL OF THE U.C.P. BUILDING AS CLAIMANT HELD A CIGERETTE AND PHONE. NEVER SAYING HE WAS A HOUSING BUREAU PSA6 OR COP. CLAIMANT IS KNOCKED OUT AFTER THE THIRD STRIKE AGAINST THE WALL. CLAIMANT AWAKES CUFFED WITH ANOTHER PSA6 OFFICER REACHING INTO HIS RECTUM AREA. CLAIMANT FEELS MANY MEN ON TOP OF HIM. HE SEE A CROWD FORMING AROUND HIM AND SCREAM "THEY DIGGING IN MY ASS CALL MY WIFE...RING MY BELL". CLAIMANT HEAD IS BUSTED FROM MULTIPLE BLOWS TO IT. INSTEAD OF WAITING ON THE EMS. OFFICERS TOSS CLAIMANT INTO a CAR FACE DOWN AS COP PULLS HIM IN HE RECEIVES KNEES TO THE TOPOF THE HEAD. THE EMS FDNY IS WAITING AT PSA6 BLDG. CLAIMANT IS PLACED IN A WHEEL CHAIR BUT COPS REFUSE TO LET THE EMS TAKE CLAIMANT TO HOSPITAL. CLAIMANT IS WHEELED INTO THE BLDG FEET CUFFED AND TOSSED INTO A CELL INTO ANOTHER PERSONS THROW UP. OFFICERS RUSH IN AND BEGIN BEATING

A[nd] STRIPPING HIM GOING INTO HIS RECTUM FULLY. HE WAKES UP ON FLOOR STILL CUFFED AND

NOW BLEEDING FROM THE OTHERSIDE OF THE HEAD. HIS PANTS WERE DOWN AND THE EMS FDNY WORKER

WAS LAUGHING AND THE OTHER REFUSED TO LOOK...PHONE AND MONEY WERE ALSO TOOK." (EXHIBIT D)

36. This was the most notoriously inhumane, nastiest, degrading, and traumatizing

thing that ever happened to Mr. HENRY. Defendant RANDYS FIGUEREO, is the "LIGHTSKIN MALE"

in HENRY's excessive force Personal Injury Claim against the CITY OF NEW YORK above.

Defendant GARY PEREZ, is "ANOTHER PSA6 OFFICER" in the above excessive force Personal

Injury Claim against the CITY OF NEW YORK. Defendants RANDYS FIGUEREO, GARY PEREZ, and

JUAN CARRERO are "MANY MEN ON TOP" and "PSA6 COPS" described in HENRY's excessive force

Personal Injury Claim against the CITY OF NEW YORK. Defendant GARY PEREZ, is "COP PULLS

HIM IN HE RECEIVES KNEES"; Mr. HENRY (plaintiff) was pulled in by PEREZ who entered marked

NYPD patrol car through the left rear passenger side door and delivered knees to the top

of plaintiff's head as another officer pushed HENRY elevated feet into the right rear

door, described in HENRY's above filed PERSONAL INJURY CLAIM against defendant CITY OF

NEW YORK. Defendants RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, GARY PEREZ, CARLOS

THOMAS are "OFFICERS RUSH IN" described in Mr. HENRY's excessive force Personal Injury

Claim against defendant CITY OF NEW YORK. Defendants  JUAN CARRERO, CARLOS PIMENTEL,

RANDYS FIGUEREO, CARLOS THOMAS punch, grab, strip, and pin down HENRY's cuffed limbs

(rear handcuffed arms and shackled at the ankle legs) by holding them. Plaintiff is

penned and cannot move. Defendant GARY PEREZ, re-enters the PSA 6 cell with thick blue

rubber gloves sanitary gloves. Plaintiff could not believe his eyes but once the

defendants started to grip him and his feet were up, chest hit the cell seating plaintiff

screamed for help as his basketball shorts were pulled down. HENRY tries to push away and

scramble to turn himself off his stomach and protect his manhood but the pushing and pulling

of him trying to go with the defendants that had hold his already chain restrained legs

and arms momentum to get free; but Mr. HENRY feels the blue gloves against his anal area

then a finger or two in his anal cavity with force, which makes his body jump and the

defendants go with the momentum; and the left side of HENRY's head bangs into the cell

gate. This causes just over the plaintiff's left eyebrow to tear open and bleed. Mr. HENRY

(the Plaintiff) is knocked unconscious.

37. Mr. HENRY awakes from the laughter of the lighter complexion FDNY EMT (LYNCH or KLEB). The plaintiff is laying on his stomach arms rear cuffed, shorts pulled down to to the ankle shackles that locked against his ankles. HENRY is bleeding from his head, anus, and other hurt scrapped up body part. He is in tears when he ask the FDNY EMT's ROBERT LYNCH and KYLE KLEB, "Why didn't you help me?". HENRY believed it was their duty but they did not care. The smell of bodily waste that discharged through HENRY's anus. The LYNCH and KLEB (NEW YORK CITY FIRE DEPARTMENT EMERGENCY MEDICAL SERVICE) helped HENRY to his feet, pulled up his shorts and black Polo underwear which was now wet with bodily waste. Plaintiff notices FIGUEREO behind the EMT's and in pain HENRY says, "You violated my rights", FIGUEREO replies, "You have no rights". Plaintiff is placed back into the wheelchair in soiled clothes. (EXHIBIT E)

38. Plaintiff has to sit sideways due to anal and back pain caused by defendants PEREZ, FIGUEREO, CARRERO, PIMENTEL, and THOMAS. LADONNA D. HENRY (wife of Mr. HENRY) ask LYNCH and KLEB (FDNY EMS) what hospital will her husband be taken and EMT's state they cannot tell her as HENRY is loaded into the FDNY EMS vehicle. Blood is dripping from HENRY's face. His children are shocked and plaintiff can see it in their faces. Plaintiff tells wife to get the keys to his SUV. She advises HENRY that the Housing Bureau PSA 6 desk officer told her his SUV is "EVIDENCE" and the KEYS to the SUV could not be turned over to her. (EXHIBIT A)

39. Defendant CHRISTAIN HERNANDEZ authorized strip search that detailed beating and sodomy of plaintiff while at Housing Bureau PSA 6. Defendant HERNANDEZ authorized the strip search without consent and for it to be done while plaintiff was rear handcuffed and leg restraints or by any means necessary. Defendant HERNANDEZ authorized for defendants PEREZ, FIGUEREO, CARRERO, PIMENTEL, and THOMAS to beat and hold down HENRY while defendant PEREZ used blue rubber gloves to enter plaintiff. Defendant HERNANDEZ being a lieutenant of the New York City Police Department is unworthy of rank. (EXHIBIT F)

40. On September 15,2016, at or about 11:00am, at Manhattan Detention Center (MDC), 125 White Street, New York, NY 10013, plaintiff is served by Parole Officer PATINA

CARTER-CLARKE (who began supervising Mr. HENRY June 2014 after PO Shaw) with State of New York Department of Corrections and Community Supervision (NYSDOCCS) Notice of Violation paper and Violation of Release Report (#0752826). Plaintiff disregarded PO PATINA CARTER-CLARKE's advice to waive his Preliminary Hearing. PO CARTER-CLARKE advises HENRY, he would only get 90 days because of the amount of time he had been home. Moreover, HENRY (plaintiff) had successfully passed the New York City Department of Sanitation Exam (5001), maintained job employment at J & L Parking and Auto Sales (Harlem, NY) for 2½ years, attended Farrari Driving School (South Bronx, NY) to obtain his CDL; and plaintiff had responsibilities as a husband and father (6 children). Mr. HENRY expressed to Parole Officer (PO) CLARKE, "My children need to get to school on time everyday and my RIGHTS were violated", also "I know you see all these scars on me". PO CLARKE replies, "You have to know who to pick your battles with!", and storms out of the legal visit booth. (EXHIBIT G)

41. On September 19,2016, the same day plaintiff is arraigned on indictment he receives the Felony Complaint which details a charge he was not indicted for. HENRY stands in front of JUDGE NEIL ROSS (Part 23), at 100 Centre Street, NY, NY 10013, and could not believe his ears when he heard Criminal Possession of a Controlled Substance in the 4°. Plaintiff needed a personally paid attorney but could not get to his bank card of credit cards because those items were in his SUV. He figured he could sell his SUV with help of his boss at J & L Parking and Auto Sales, but Housing Bureau PSA 6 had it (SUV) as "EVIDENCE" and his StateFarm Insurance payment (cash). (EXHIBIT C & H)

42. However, what plaintiff needed most was the VIDEO SURVEILLANCE out of his SUV. Accordingly, defendants FIGUEREO and PEREZ could not prove to the NEW YORK COUNTY GRAND JURY that HENRY knowingly and unlawfully possessed a narcotic drug with intent to distribute (sale) it. This solidified the fact defendants FIGUEREO, PEREZ, and CARRERO's observation was insufficient to amount to a lawful search and arrest of HENRY. The STOP AND FRISK gone wrong or run down and beat down gone wrong, due to the VIDEO SURVEILLANCE via plaintiff's SUV; and lack of honest supervision caused defendants PEREZ, FIGUEREO, CARRERO, PIMENTEL, THOMAS, and HERNANDEZ to fabricate what really happened during the incident, eliminate evidence (SUV), and unconstitutionally continue to beat and sodomize

10

Mr. HENRY; moreover, believing the were above the law and could silence HENRY (plaintiff). Defendant CITY OF NEW YORK allows these employees to behave in this manner. CITY OF NEW YORK (ADA Brian Rodriguez) would not dismiss the indictment (3584-2016). Knowing the facts the defendant CITY OF NEW YORK did not care for the CIVIL RIGHTS of LEVAR T. HENRY. Attorney GAYANILO (18B defense lawyer) advised Mr. HENRY, "Rodriguez [CITY OF NEW YORK] wants to teach you [LEVAR T. HENRY] a lesson". A case with no prior investigation and/or STOP AND FRISK easily became a Special Narcotics (NYC) cover up. A LESSION. (EXHIBIT I)

43. On September 23,2016, HOUSING BUREAU PSA 6 defendant Police Officers GARY PEREZ and RANDYS FIGUEREO are brought to testify by PO PATINA CARTER-CLARKE (HENRY's Parole Officer, Manhattan II Area Office-NYSDOCCS, 314 West 40th Street, NY, NY). This Post Release Supervision (PRS) Preliminary Hearing took place on the above date at RIKERS ISLAND JUDICIAL CENTER, East Elmhurst, NY 11370). PO CLARKE immediately lied under oath about supervising HENRY since his release, "Roundabout -- it was 2012. Roundabout December or so". PO PATINA CARTER-CLARKE began supervising HENRY June 2014 after PO Shaw. Plaintiff understood what PO CLARKE meant, "You have to know who to pick your battles with!", the last time he seen her at MDC on September 15,2016. He could tell if she had the power to waive HENRY's hearing without his consent as GAYANILO waived NEW YORK COUNTY preliminary hearing and GRAND JURY appearance, she (PO CLARKE) would have. HENRY is represented by ERIN NAGY, esq. (Legal Aid Society). The Hearing Officer SHARON BURNETT (who was a JANE DOE defendant in HENRY v. FISCHER, 2011 WL 5223600). Hearing Officer SHARON BURNETT was very bias against HENRY but it seemed it was nothing BURNETT could do to  help make the testimony for defendants FIGUEREO and PEREZ sound creditable. BURNETT, THE INTERPRETER, and CARTER-CLARKE did the best they could do to testify for defendants RANDYS FIGUEREO and GARY PEREZ. (EXHIBIT J)

44. On September 23,2016, defendants FIGUEREO and PEREZ basically lied about everything. Below are some of many statements that did not add up and should have took all merit and creditableness from these NYPD HOUSING BUREAU PSA 6 officers. One of the axioms of defendants FIGUEREO and PEREZ is why tell the truth, if we believe LEVAR T. HENRY has no CONSTITUTIONAL RIGHTS.

**PAGE 15 PRELIMINARY HEARING**

NADY: "When did you first observe my client?"

FIGUEREO: "We observed him when he came out of his truck."

### PAGE 36 PRELIMINARY HEARING

NADY: "When did you first observe my client?"

PEREZ: "When he pulled up in his SUV."

### PAGE 15 PRELIMINARY HEARING

NADY: "Where were you parked in relation to the truck?"

FIGUEREO: "On the side street."

NADY: "Were you across the street from his parked vehicle?"

FIGUEREO: "No, on the side street behind. He parked on the corner."

### PAGE 36-37 PRELIMINARY HEARING

NADY: "How far away from the vehicle would you say you were?"

PEREZ: "We were like on the other sidewalk."

### PAGE 15, 16 PRELIMINARY HEARING

NADY: "He's parked on the corner of 154th Street?"

FIGUEREO: "Correct, and I'm parked on Macombs."

NADY: "How many feet away from his truck would you say your vehicle was at the time you first observed him?"

FIGUEREO: "Probably 10-15."

### PAGE 37 PRELIMINARY HEARING

NADY: "How many feet away?"

PEREZ: "Between like 10 and 15 feet."

### PAGE 37 PRELIMINARY HEARING

PEREZ: "We all saw him so we say yo, let's get him."

NADY: "Just after he got out of the truck you said that?"

PEREZ: "No, before. We saw the car."

### PAGE 17 PRELIMINARY HEARING

NADY: "Had you received any tips about him?"

FIGUEREO: "No."

### PAGE 19 PRELIMINARY HEARING

NADY: "Had you ever met my client before?"

FIGUEREO: "No."

### PAGE 15 PRELIMINARY HEARING

NADY: "He gets out of his truck?"

FIGUEREO: "Correct."

NADY: "And do you follow him?"

FIGUEREO: "He starts walking up the block. We made the left on the block."

### PAGE 26 PRELIMINARY HEARING

NADY: "I'm going to object to the hearing officer leading the witness."

BURNETT: "Yes, Counsel. They walked away from you?"

FIGUEREO: "They started walking, and we made the left and started going in the same direction they were going."

### PAGE 16, 17 PRELIMINARY HEARING

NADY: "How long did you watch him?"

FIGUEREO: "About two minutes."

NADY: "He was walking away that entire time?"

FIGUEREO: "Yes."

NADY: "How far away from you did he get?"

FIGUEREO: "As he started walking down, we started getting close because he was walking and we were moving in a car, so we were moving faster."

### PAGE 33 PRELIMINARY HEARING

PEREZ: "At the scene, 154 and Macombs, my partner recovered three bags."

PEREZ: "At Macombs Place my partner recovered three bags."

45. The above statements are highlighted/pointed out as proof defendants FIGUEREO and PEREZ are making false statement under oath; moreover, creating a false illusion stage or accessible street setting that is not real and does not sound real enough to prove a false observation of HENRY that never happened. Defendants FIGUEREO and PEREZ are in the small car but at two different arrest locations. FIGUEREO, CARRERO, and PEREZ were sitting

in a low gray Honda/Toyota observing but not where they stated. Both FIGUEREO and PEREZ agree HENRY has a large black CHEVY SUBURBAN LTZ 1500 (2008) SUV which they claim he parked on the corner of 154th Street; and they are parked, "Probably 10-15" feet, "Between like 10 and 15 feet", away from HENRY. Actually, it sounds coached; they make it convenient as possible and finally add the individual standing on the corner waiting at or about 9:17pm in the dark of night. Defendants never say what side of 154th Street (left or right, North or South) HENRY (the plaintiff) is parked on, which is an imperative. However, defendants state HENRY exits his SUV on the corner. HENRY could have easily done a transaction in his vehicle but that was not the case. If these defendants are parked/ observing from "[b]etween like 10 and 15 feet", that would mean they are on the corner also or blocking traffic but defendants FIGUEREO and PEREZ never say that, instead they testified, "No, on the side street behind. He parked on the corner", and "We were like on the other sidewalk". Wherever defendants were the small gray car would not help their observation, if any. At the location none of these spots exist but it sounds good in the testimony to the people who do not know the area. (EXHIBIT J)

46. Where defendant FIGUEREO (driver or conveniently placed driver) really goes illusional and buzzarro in his testimony is he testifies twice that he made a "left" turn. It is a fact a left turn cannot be made on W.154th Street from Macombs Place if FIGUEREO, CARRERO, and PEREZ are parked, "Probably 10-15" feet away making an observation. If this was a fact defendants FIGUEREO, CARRERO, and PEREZ would've been parked on the downtown side of the street facing the wrong direction (facing uptown). If the defendants were parked "On the side street" behind and made a "left" their car would have been headed East, in the direction of the HARLEM RIVER DRIVE. If their car was parked on the South corner "Between 10 and 15 feet", Mr. HENRY's SUV would be to big for the defendants to see over. A right turn can only be made into W.154th Street from Macombs Place legally from "Probably 10-15" feet. Macombs Place has uptown and downtown traffic lanes. (EXHIBIT J) Furthermore, Macombs Place is a two way street with a divider/walkway placed in the middle.

47. In more reality, at or about a month prior to this observation incident J & L Parking and Auto Sales (neighborhood parking lot at 280 W.155th Street, NY, NY 10039) had closed their flag ship parking lot. There are several other locations in other parts of

New York City but this West 155th location had been serving the uptown community for 30 years. Therefore, parking in this uptown area was very bad. People who lived in this neighborhood stopped moving their vehicles especially at night. Plaintiff circled his block where he, Ladonna D. Henry, and 6 children called home (W.154th); driving a large CHEVY SUBURBAN LTZ 1500 and needed a place to park. August 18,2016, at or about 9pm was one of those nights a driver (HENRY) is looking into parked cars windows hoping to see a driver, just to ask "Are you pulling out?". Defendants FIGUEREO, CARRERO, and PEREZ would have been a target for neighborhood guest and residents for the parking spot that was so easy to pull out of and never lose sight of someone walking in the opposite direction, if any. It took skill for plaintiff to park between two cars that feared catching the parking ticket HENRY caught on or about a month prior for parking in the same spot on August 18, 2016. That spot was not on the corner of 154th Street or opposite "70 Macombs Place" but in front of the Toyota Part Store driveway which is not on 154th Street corner where there is a Car Wash detail located; and 3 1/2 blocks away from "opposite 70 Macombs Place" (W. 151st Street, HARLEM RIVER HOUSING). (EXHIBIT J & L)

48. Defendants PEREZ, FIGUEREO, and CARRERO of NYPD HOUSING BUREAU PSA 6 ANTI-CRIME UNIT never observed a hand to hand between HENRY and another individual. PEREZ: "We all saw him so we say yo, let's get him", ERIN NADY: "Just after he got out of the truck you said that?", PEREZ: "No, before. We saw the car". The defendants were clearly out to violate HENRY's Constitutional Civil Rights and defendant CITY OF NEW YORK's Anti-Crime Unit did it because the defendant CITY OF NEW YORK allows their employees (defendants PEREZ, FIGUEREO, and CARRERO) to as long as they lie about it. HENRY was alone.

### FELONY COMPLAINT 8/19/16 14:57

PEREZ: "I then observed Police Officer Randys Figuereo, Shield# 19407 of Housing Bureau
   PSA 6, in a struggle with HENRY, in that HEHRY was refusing to be handcuffed by
   stiffening his arms and continuously reaching toward the back of his shorts
   dispite orders to stop resisting. I am informed by Officer Figuereo that he
   observed a total of three (3) small plastic bags each containing a white rocky
   substance fall from HENRY's shorts during the struggle."

### PAGE 18-19 PRELIMINARY HEARING

NADY: "Did you say anything to my client?"

FIGUEREO: "I don't recall."

NADY: "At what point did you say something to my client?"

FIGUEREO: "I was trying to, but he was resisiting."

CLARKE: "Did you identify yourself?"

NADY: "At this point you had not observed any actual physical material. You
had only observed him shaking hands?"

FIGUEREO: "We saw the movement. In my experience I believed it to be a drug
transaction."

NADY: "Had you ever met my client before?"

FIGUEREO: "No."

NADY: "All three of the officers surrounded my client at this point?"

FIGUEREO: "I stopped your client, and my other two partners went to the other guy,
the other person."

### PAGE 22-23, 24 PRELIMINARY HEARING

FIGUEREO: "Anticrime."

CLARKE: "Which means?"

FIGUEREO: "Consists of working in plainclothes, looking for people doing illegal
activities. To defer crime before it happens."

CLARKE: "When you met with Mr. Henry, did you identify yourself?"

CLARKE: "Did you say anything to him?"

FIGUEREO: "I don't recall exactly what I said."

BURNETT: "When you say you tried to place him in cuffs, did you tell him to
turn around? What exactly do you recall saying to him?"

FIGUEREO: "I remember I was trying to put his hands to the wall."

BURNETT: "You were close to a wall?"

### PAGE 24-25 PRELIMINARY HEARING

BURNETT: "You didn't tell him what he was being placed under arrest for?"

FIGUEREO: "Not at the moment."

BURNETT: "What's the procedure?"

FIGUEREO: "The procedure is you tell them when it's practical."

BURNETT: "In this case you did it afterwards?"

FIGUEREO: "It was not practical because he was resisting."

### PAGE 38 PRELIMINARY HEARING

NADY: "You all got out of you car at that point?"

PEREZ: "Yes."

NADY: "Did you say anything to my client?"

PEREZ: "Myself and my partner, we stop the other defendant, Goldfaden,

and my other partner stopped Mr. Henry."

NADY: "They were placed under arrest?"

PEREZ: "Yes."

NADY: "Did you say anything to my client?"

PEREZ: "When I went to assist my other partner, I told the defendant to stop resisting."

NADY: "Prior to that, you didn't say anything to my client?"

PEREZ: "No, because I was with the other defendant."

NADY: "But at that point he was not free to leave?"

PEREZ: "No."

49. Defendants FIGUEREO and PEREZ never identified themselves as police officers. When it's convenient for defendants to say HENRY was with this individual talking, touching, and walking they say it. Now defendants show that HENRY (plaintiff) was solo because defendants FIGUEREO and PEREZ now created distance that was always there. Mr. HENRY was nowhere near GOLDFADEN. PEREZ and FIGUEREO use the illusion of HENRY being in a hand to hand just to justify defendant PEREZ rocketing toward HENRY and banging his head into the "wall" of the United Cerebral Palsy (UCP) building, across from 254 WEST 154TH STREET. The third bang to the right side of plaintiff's head caused him to be knocked unconscious and more vulnerable (HENRY loss consciousness). Attorney ERIN NADY made a point of the above issue at the PRELIMINARY HEARING.

### PAGE 9   PRELIMINARY HEARING

FIGUEREO: "Well he was holding something in his fist. He wouldn't let me cuff him. He wouldn't open his fist. He was trying to put something in his pocket. I was trying to pull it out. Three bags of crack fell out.

### PAGE 30 PRELIMINARY HEARING

CLARKE: "Eventually he was cuffed?"

PEREZ: "When I went to assist, yes, we cuffed him."

CLARKE: "What transpired after that?"

PEREZ: "After that --"

CLARKE: "What did you observe, if anything?"

PEREZ: "After that, he dropped three bags of crack on the floor."

### FELONY COMPLAINT 8/19/16 14:57

PEREZ: "I am informed by Officer Figuereo that he observed a total of three (3) small plastic bags each containing a white rocky substance fall from HENRY's shorts during this struggle."

### PAGE 39 PRELIMINARY HEARING

PEREZ: "When we tried to cuff the defendant two bags fell on the ground, and then another fell on the ground, so PO Figuereo recovered the drugs."

### CASE SEARCH – ARREST INFO SHEET

PEREZ: Occurrence Location "70 MACOMBS PLACE HARLEM RIVER HOUSES WEST 151 STREET MANHATTAN NY"

Arrest Narrative "AT T/P/O DEFT. WAS OBSERVED IN HAND TO HAND EXCHANGE WITH ANOTHER APPREHENDEDPREP. SILA 12 BAGS AND 1 LARGE CRACK ROCK WERE RECOVERED FROM DEF POSSESSION UPON CONDUCTING AN AUTHORIZED STRIP SEARCH AT THE PCT."

50. Defendants FIGUEREO and PEREZ create a fabrication orally and in documentation by reinventing their story every chance they get. PEREZ and FIGURERO once again do it when it's convenient. Through the whole PRS Preliminary Hearing PEREZ and FIGUEREO do not mention the "United States currency" (Felony Complaint 8/19/16 14:57). The defendants figured it would not be convenient and instead made this story about three bags in a fist,

falling before and after HENRY was cuffed. First PEREZ is informed then he (PEREZ)
witnesses. If PEREZ, CARRERO, and FIGUEREO already seen a transaction why does HENRY
need these "three (3)" in his fist, his shorts, his pockets, before and after cuffs are
already applied dropping from his hand. Defendants had no grounds to believe that HENRY
had committed a crime.It just does not add up to a lawful search or arrest. Constitutional
Rights are a joke to defendants. Defendants even changed the address of the incident. To
make it look like it happened in HARLEM RIVER HOUSES (projects) would make it look more
convenient because that would make it look like HOUSING BUREAU PSA 6 officers where
patrolling their jurisdiction; instead, defendants were stalking, striking, and sodomizing
HENRY. It's do what you got to make it stick (charges) to Mr. HENRY because we already
knocked him out and sodomized him. When defendants found out they were being recorded doing
the wrong thing, it was only one option and that was to get rid of Mr. HENRY's SUV.
Defendant HERNANDEZ authorized a strip search after the SUV was searched.

### PAGE 19-20 PRELIMINARY HEARING

FIGUEREO: "I stopped your client, and my partner went to the other guy, the other person."

NADY: "He's placed into custody. Did he have any injuries?"

FIGUEREO: "He went to the hospital. He said he had injuries."

NADY: "Did you ride with him to the hospital?"

FIGUEREO: "No."

NADY: "Did an ambulance pick him up?"

FIGUEREO: "Yes."

NADY: "You waited with him while you waited for the ambulance?"

FIGUEREO: "I was in the cell with him."

BURNETT: "In the cells?"

FIGUEREO: "Yes."

BURNETT: "You already got to the precinct?"

FIGUEREO: "We brought him to the precinct. The ambulance went to the precinct."

NADY: "What were his injuries?"

FIGUEREO: "I don't know."

NADY: "Was he bleeding?"

FIGUEREO: "I don't recall."

NADY: "did he complain of pain to you?"

FIGUEREO: "Not to me. He was complaining saying he wanted an ambulance."

NADY: "Did you search him at the scene?"

FIGUEREO: "No."

### PAGE 21-22 PRELIMINARY HEARING

NADY: "You indicated you were in the cell waiting with him?"

FIGUEREO: "Yes."

NADY: "Was this prior to the hospital or after the hospital?"

FIGUEREO: "Prior."

NADY: "At what point did the ambulance arrive?"

FIGUEREO: "I think they arrived within the same time."

NADY: "The same time as what?"

FIGUEREO: "As your client."

NADY: "So he's taken to the hospital how soon after he arrives at the precinct?"

FIGUEREO: "I don't remember the exact time. I would say 15, 20 minutes."

NADY: "Did you arrive to the precinct before him?"

FIGUEREO: "Yes."

NADY: "How many minutes before?"

FIGUEREO: "Probably five minutes."

NADY: "He was escorted out of the car into the precinct?"

FIGUEREO: "Yes."

NADY: "Did you observe him right away?"

FIGUEREO: "At the precinct?"

NADY: "Yes."

FIGUEREO: "I saw him when he walked in."

NADY: "Did he have any visual injuries then?"

FIGUEREO: "I don't recall."

### PAGE 39, 40 PRELIMINARY HEARING

NADY: "Once he's cuffed, do you place him in the vehicle?"

PEREZ: "Afterwards, yes."

NADY: "Did you place him in the vehicle?"

PEREZ: "Not me."

NADY: "Who placed him in the vehicle?"

PEREZ: "It was PO Pimentel (sic) and PO Hernandez."

NADY: "While you were at the scene, did you speak to him at all about any injuries he sustained?"

PEREZ: "Because I took the other defendant, me and my partner took Goldfaden to the precinct."

NADY: "Did you see him bleeding?"

PEREZ: "No, ma'am."

NADY: "Did you hear him request an ambulance?"

PEREZ: "Afterward they told me that they called an ambulance for him."

NADY: "Do you know what the ambulance was called for?"

PEREZ: "Supposedly he said that it was his wrist."

**PAGE 42 PRELIMINARY HEARING**

NADY: "How long would you say it was before you got to the precinct?"

PEREZ: "Like ten minutes after."

NADY: "Ten minutes?"

**PAGE 44 PRELIMINARY HEARING**

BURNETT: "Officer Perez, where were you as well as Mr. Henry when the ambulance was called?"

PEREZ: "When we approached the defendant, the car that we drove was stopped in traffic, so we put the defendant in the car. We took the other defendant to the precinct."

BURNETT: "Where were you when the ambulance was called?"

PEREZ: "We were already in the precinct."

## FELONY COMPLAINT 8/19/16 14:57

PEREZ: "After the above-described events, I observed HENRY get into the back seat of

a marked NYPD RMP. I am informed by Police Officer Carlos Pimentel, Shield#

07608 of Housing Bureau PSA 6, that after arriving at the precinct, he recovered

one (1) small plastic bag containing a white rocky substance from the area where

HENRY was seated, that no other individuals were seated, that no other individuals

were seated in that area with HENRY, and that Officer Pimentel did not observe

said plastic bag prior to HENRY being placed in the RMP.

I am informed by Officer Pimentel as well as Police Officer Carlos Thomas, Shield#

21295 of the Housing Bureau PSA 6, that they recovered a total of (8) small

plastic bags each containing a white rocky substance from the holding cell in

which HENRY was placed after arriving at the precinct, that no other individuals

were in the cell with HENRY, and that they did not observe said plastic bags

prior to HENRY being placed in the cell.

I am informed by Police Officer Juan Carrero, Shield# 00160 of the Housing

Bureau PSA 6, that pursuant to a search of HENRY's person at the precinct, he

recovered one (1) large white rocky substance wrapped in plastic."

51. Defendant FIGUEREO testifies to being "in the cell with him"; however, PEREZ wrote

in the Felony Complaint over 12 hours after the arrest, "that no other individuals were

in the cell with HENRY". In contrast, FIGUEREO even answers "Yes", when asked, "You

indicated you were in the cell waiting with him?"; defendant FIGUEREO clearly stated. "I

was in the cells with him" and supplied this information before anyone asked about a cell.

It is as if defendant PEREZ wrote a false complaint without advising fellow defendants

FIGUEREO, CARRERO, PIMENTEL, and THOMAS of his strategy to nail charges to plaintiff

HENRY. Defendant PEREZ testifies to placing plaintiff into the vehicle (RMP), then recants

because he realizes that he put a "small plastic bag" there in his FELONY COMPLAINT. In

contrast, defendant CARLOS PIMENTEL does not state he found any such "small plastic bag"

in a back seat of a marked NYPD RMP in his MEMOBOOK. Furthermore, defendants CARLOS THOMAS

or CARLOS PIMENTEL wrote no such thing relating to them finding eight "small plastic

bags" inside of the holding cell in their MEMOBOOK's. Defendant PEREZ does not state it in his MEMOBOOK and defendant FIGUEREO's MEMOBOOK does not exist. Defendant CARRERO does not express the findings either. PEREZ is planting evidence in his Felony Complaint against HENRY. defendant PEREZ was the defendant pulling HENRY into his knee with force as he loaded HENRY into the marked police car (RMP). HENRY already bleeding from FIGUEREO forcing his (HENRY's) head into the UCP wall and knocking HENRY out cold. PEREZ note in various other reports "12 BAGS AND 1 LARGE CRACK ROCK WERE RECOVERED FROM DEF POSSESSION UPON CONDUCTING AN AUTHORIZED STRIP SEARCH" (Case Search – Arrest Info Sheet). There were no grounds to believe that plaintiff had committed any crime; so, defendants created grounds with a fabricated story that just does not add up to trained police work. (EXHIBIT F)

52. PEREZ did not want FDNY EMS (LYNCH and KLEB) to pick HENRY up at the scene because the defendants were out of place and STOP AND FRISKING in the wrong jurisdiction. Moreover, the false story would be hard to put together; at that time there were no grounds to believe that plaintiff had committed any crime. Nonetheless, Hearing Officer Burnett ask PEREZ, "Where were you as well as Mr. Henry when the ambulance was called?", PEREZ tries to change the subject as he did previously. PEREZ losses his cockiness, "When we approach the defendant, the car that we drove was stopped in traffic, so we put the defendant in the car. We took the other defendant to the precinct". Now PEREZ says he put HENRY in the car before he takes the other to PSA 6. FIGUEREO says plaintiff walked into the precinct but he was wheelchaired in by EMT's. HENRY was layed out on his stomach in dizziness from PEREZ's knees to the head, while traveling in the marked police car to PSA 6. KLEB and LYNCH (FDNY) help plaintiff into the wheelchair and shackled plaintiff's ankles. Plaintiff is wheelchaired into Housing Bureau PSA 6, and dumped into the holding cell.  (EXHIBIT E)

53. Defendants PEREZ, FIGUEREO, CARRERO, THOMAS, PIMENTEL, and HERNANDEZ manufactured false document. All defendants that participated in the beating and sodomy of HENRY are sprinkled into the fabricated Felony Complaint, authored by defendant PEREZ; because PEREZ did not want to go down alone for violating the constitutional rights of citizen HENRY. Defendant FIGUEREO refused to take credit for the arrest; initially he was the first to violate plaintiff's constitutional rights, but oddly not the arresting officer.

The point is nothing was found on the scene (opposite of 254 W.154th Street). A neighbor called 9-1-1 for FDNY EMS while noticing Mr. HENRY getting jumped by FIGUEREO, CARRERO, and PEREZ. Defendants did not call FDNY EMS to the scene because they were trying to move the scene to "opposite 70 Macombs Place" on 151st Street (NYCHA). When KLEB and LYNCH arrived defendants PEREZ and PIMENTEL scoop up the unconscious plaintiff off the UCP sidewalk and quickly load HENRY into a marked police car; because at the time PEREZ, CARRERO, and FIGUEREO had no ground to believe HENRY committed a crime and defendants had no evidence. The FDNY EMS follow HENRY inside of the police car back to PSA 6 but defendants will not allow it. LYNCH and KLEB (FDNY EMS's EMTs) are forced to wait just outside the cell while defendants continue to violate Mr. HENRY's constitutional rights under the 4th AMENDMENT. LYNCH and KLEB's duty was not to help HENRY because they probably see NYPD do harm to people. CITY workers, look out and/or protect each other. The incident was funny to the FDNY EMT (LYNCH/KLEB). (EXHIBIT D & E)

54. The nearly 13 hour written Felony Complaint and defendant CITY OF NEW YORK's indictment show a decorated deceptive chronology. Defendants could have killed the HENRY FAMILY and just testified under oath, "Supposedly he said that it was his wrist"; and go home to their families and take their children to school. Defendants PEREZ and FIGUEREO deny injuries to HENRY. That still does not add up to the fact multiple HUMAN RIGHTS and CONSTITUTIONAL RIGHTS are expunged from plaintiff on August 18,2016 and so on. Defendants PEREZ, FIGUEREO, CARRERO, HERNANDEZ, THOMAS, and PIMENTEL repeatedly violated HENRY as if CIVIL RIGHTS did not exist in the UNITED STATES. Manhattan is in the UNITED STATES and it leads by example. By being in plain clothes, night time, never identifying self as police officers, never reading HENRY his rights, and "to defer crime before it happens" (ANTI-CRIME UNIT) defendants CITY OF NEW YORK, FIGUEREO, PEREZ, PIMENTEL, CARRERO, THOMAS, and HERNANDEZ violates the RIGHTS OF AMERICAN CITIZEN HENRY. (EXHIBIT E, J, K, & M)

55. Plaintiff is introduced to Private investigator JOHN SCANLAN via JEFFREY A. HORN, Attorney at Law, at or about January 2015. Plaintiff meets with JOHN SCANLAN on or about September 22,2016 at a Bronx County court appearance. HENRY explains some of the things that needed to be investigated in his case involving defendants. SCANLAN worked on a

prior case for HENRY; moreover, SCANLAN had previous knowledge of HENRY's SUV and the

VIDEO SURVEILLANCE upgrade (front and rear dash cams). Nonetheless, plaintiff meets

with defense attorney PERCY DIEGO GAYANILO, who tries to convince plaintiff he does not

need a private investigator. Furthermore, after plaintiff sent GAYANILO the PRS

Preliminary Hearing transcript twice GAYANILO advises, "They always lie and they will

lie again". "They meaning Defendants PEREZ and FIGUEREO. GAYANILO tells HENRY to have

his wife (LADONNA D. HENRY) to gather and bring evidence to him. Uncannily, GAYANILO's

office does not exist, he only gets mail there. The attorney GAYANILO seemed to be in

fear that the Manhattan Judge (ROSS) of Part 23 would not grant any hearings if SCANLAN

was hired. SCANLAN concurred he had been hired. Plaintiff knew SCANLAN to work/investigate

but nothing happened. GAYANILO blamed it on HENRY that the investigation had not started;

but did not feel it was his responsibility to communicate with SCANLAN. No meeting

between SCANLAN, GAYANILO, and HENRY ever surfaced. HENRY's research and transcript

expressing his rights were violated fell on deaf ears. Seemed to HENRY nobody wanted

the truth to come out. Nobody wanted to return his vehicle or be held accountable for

abuse. (EXHIBIT A, I, & N)

56. ERIN NADY, the LEGAL AID attorney who represented at the PRS PRELIMINARY HEARING

informed HENRY after the SEPTEMBER 23,2016 minutes (transcript) were obtained she would

file a petition (writ). At the next meeting NADY explained since HENRY being held in

Manhattan (MDC, 125 white Street, New York County) and not RIKERS ISLAND (Bronx County)

she could not file the petition. There was some other situation between 18B and Legal

Aid Society regrading who can do what, and who cannot for HENRY (POLITICS); however,

NADY advised CITY OF NEW YORK courts are different from the Bronx. The Bronx was were

it could be filed. Plaintiff is further informed by NADY that the defendant CITY OF

NEW YORK's ADA will not let the defendants PEREZ and FIGUEREO testify again at the

PRS final Hearing, at RIKERS ISLAND. NADY further advises HENRY that GAYANILO does not

return any of her phone calls.(EXHIBIT O)

57. Plaintiff receives a letter dated September 19,2016, from the CITY OF NEW YORK

office of the COMPTROLLER. This missive expresses DEFECTIVE SERVICE, "If you wish to

pursue your claim against the City, you may file your Notice of Claim by a proper

method of service within 10 days of this receipt of this letter". Plaintiff sends again,
Certified Mail. Plaintiff receives a second letter dated October 4,2016; Claim No.
2016PI028447 appears. Third letter from ANASTASIA PEREZ, Examiner-Personal Injury division,
dated October 5,2016. Soon after HENRY sends documents documents requested pertainent
to the claim (SS#, DOB, arrest report, PRS Preliminary Hearing transcript, medical
records particularly emergency room & ambulance and Precinct). There is no response from
Anastasia PEREZ. A forth letter dated October 14,2016 from Michael HARARY, Esq., Director,
Contact Services informs HENRY of "NOTICE OF 50-H HEARING" set to be held December 5,2016,
9:00am. PRior to the date HENRY contacts MICHAEL HARARY. HENRY explains he is being
detained in MDC. HARARY explains that the date could be pushed back until HENRY is released
because the hearing could not be held if HENRY is detained at MDC (125 WHITE STREET, NYC).
Another date is set for March 1,2017. A fifth letter is received dated November 28,2016
with adjournment date expressed prior in the phone call to MICHAEL HARARY. Plaintiff
writes a response to the communication from HARARY. HENRY was due to be sentenced in a
situation prior to the incident (8/18/16). HENRY also writes ANASTASIA PEREZ (Examiner)
to ask could he/she communicate with HARARY regarding the documents sent by plaintiff. No
response from PEREZ or HARARY. (EXHIBIT P)

58. As early as August 18,2916, HENRY (the plaintiff) has tried to obtain his SUV.
Moreover, he knew that the video could change the way the GRAND JURY heard the case. First
PSA 6 denied HENRY's wife (LADONNA D. HENRY) the keys on August 18,2016. Plaintiff
supplied GAYANILO with "POWER OF ATTORNEY" documents to hand to his wife in court. Credit
cards, bank card, PO Box keys, Drivers License, cash for StateFarm Insurance (due 8/21/16),
unlocked I-Phone 5 containing personal information (Social Security Cards, Birth Certificates
and medical documents) HENRY scanned and stored. These important documents belonged to the
HENRY FAMILY (2 adults and 6 children). Plaintiff and wife fears identity thief of
documents. Over 2,000 family photos (2012-2016). GAYANILO tell Ladonna D. Henry that he
never got the "POWER OF ATTORNEY" document from Mr. HENRY. About a month later GAYANILO
mails legal document to plaintiff's wife. The document was dated August 23,2016 (POWER OF
ATTORNEY). HENRY prepares another "POWER OF ATTORNEY" diligently, dated August 25,2016
and mails it to his wife. LADONNA D. HENRY, is unable to locate her husband's SUV.

Plaintiff prepares another "POWER OF ATTORNEY" dated October 1,2016, now giving JAMES CHARLESTON powers. HENRY obtains a NOTICE, DEMAND AND VOLUNTARY DISCLOSURE FORM dated September 8,2016, which does not list HENRY's SUV as existing property obtained from HENRY. GAYANILO explains: "Maybe the ADA will add it later". That made no sense to HENRY. If Defendants FIGUEREO and PEREZ took the keys the vehicle should be listed. Defacto, it would never be listed, because it shows the truth and solidifies HENRY's story of abuse and observation. Nonetheless, GAYANILO was not enthused about none of HENRY's evidence. In contrast, ERIN NADY was enthused and a true officer of the court. HENRY explains to GAYANILO that the VIDEO SURVEILLANCE will be non-existant by then and GAYANILO should stop allowing evidence to be hidden. (EXHIBIT Q)

59. Plaintiff HENRY, while detained sent two PROPERTY RELEASE AUTHORIZATION forms to two different individuals in March 2017; to go to 1 POLICE PLAZA (10038) and/or 100 Centre Street (10013) and recover his cell phone and 2008 CHEVY SUBURBAN LTZ 1500, with the keys. None of these items were recovered. Defendants PEREZ, CARRERO, FIGUEREO, THOMAS, PIMENTEL, and HERNANDEZ were the last to be in possession of the keys. (EXHIBIT Q)

60. In the nearly thirteen hours PEREZ was writing the report (FELONY COMPLAINT), the defendant (PEREZ) probably toys with sprinkling drugs into plaintiff's SUV, but it was not in the budget without a warrant; moreover, if it took nearly thirteen hours PEREZ did not know what to do. PEREZ reviewed the SUV VIDEO SURVEILLANCE. In fact, the SUV was "EVIDENCE" within the first one to twelve hours of arrest but what really happened. There was plenty of time to list accessories of plaintiff but defendant PEREZ refused to list. There is no history of any car keys in any of defendant CITY OF NEW YORK employees defendant paperwork. Defendants fake observe everything, but Mr. HENRY's keys and SUV just vanished. Where is the due process of taking HENRY's property, especially if by having the property could clear plaintiff's name, a name defendants feel is not connected to citizen. LEVAR T. HENRY now believed the CITY OF NEW YORK would not investigate the CITY OF NEW YORK or make the CITY OF NEW YORK work against the CITY OF NEW YORK. GAYANILO who was hired by defendant CITY OF NEW YORK to represent Mr. HENRY would not bring to light the violation of HENRY's RIGHTS or push to spend CITY OF NEW YORK money to prove the violation. (EXHIBIT A, H, & R)

27

61. Defendants CITY OF NEW YORK, PEREZ, FIGUEREO, THOMAS, CARRERO, PIMENTEL, and HERNANDEZ have the duty to protect the property of an arrested person. The defendants must inventory the property, and prepare a receipt. In this case plaintiff HENRY was not looked upon as an arrested person because defendants believe Mr. HENRY has no CONSTITUTIONAL RIGHTS; therefore, by video recording the misconduct of HOUSING BUREAU POLICE SERVICE AREA 6 defendants that act under the color of state law, plaintiff HENRY was railroaded physically, mentally, spiritually, and financially. HENRY could not defeat the MACHINE (defendant CITY OF NEW YORK).

62. Late December 2016 HENRY gets a legal visit from Sgt. LISS and a partner at 125 White Street, NYC (MDC). Sgt. LISS is an IAB GROUP #10 officer who is employed by defendant CITY OF NEW YORK. It had been nearly six months since HENRY heard or saw an IAB officer/investigator. Plaintiff's case was neglected and now passed over to this Sgt. who was very disrespectful about the incident. Sgt. LISS insist and demanded HENRY tell him how PEREZ, FIGUEREO, and CARRERO knocked him out and entered him (sodomy). Is seemed to HENRY, IAB was not serious about the complaint. Nothing had been investigated. From August–December, nobody had spoken to HENRY's wife or witnesses. Mark NOEL, Amanda BROWN, KLEB, LYNCH, the phone video of the scene going around the neighborhood (that plaintiff's son can quote) and the footage from the SUV property of HENRY. IAB refused to investigate and it truly scared HENRY. Moreover, the Omniform System (Arrest Report) should have alerted IAB, because it list (page 3 of 3) plaintiff "refused" a phone call. Plaintiff would have easily informed his wife to come pick up his property. Fortunately, LADONNA D. HENRY showed up at PSA 6 anyway, but defendants refused to turn it over. defendant PEREZ also indicates "No" FORCE USED. Mr. HENRY only refuses to not let the unprofessionalism of IAB employed by defendant CITY OF NEW YORK stop him from filing LEVAR T. HENRY v. CITY OF NEW YORK et al., 17CV03450 (JGK)(SDA), PRO SE, in the SOUTHERN DISTRICT OF NEW YORK.(EXHIBIT S)

63. There was no legal cause to justify the stop, detention and/or arrest plaintiff or the institution of charges against plaintiff.

64. There was no legal cause to justify the use of force against plaintiff, and the

force used against plaintiff was unreasonable and excessive.

65. At all times relevant to this Complaint, the conduct of defendants CITY OF NEW YORK, PEREZ, FIGUEREO, CARRERO, THOMAS, PIMENTEL, and HERNANDEZ was in willful, reckless, and callous disregard of plaintiff HENRY's rights under federal and state law.

66. As a direct and proximate result of the conduct of all defendants, plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

### CAUSE OF ACTION

### COUNT I

**LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,**

**RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,**

**CARLOS THOMAS, and CHRISTAIN HERNANDEZ**

### FEDERAL CONSTITUTIONAL CLAIMS

67. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful arrest, the unlawful use of force, and malicious prosecution.

### COUNT II

**LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,**

**RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,**

**CARLOS THOMAS, and CHRISTAIN HERNANDEZ**

### FEDERAL CONSTITUTIONAL CLAIMS

68. The violations of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, plaintiff's damages, and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant CITY OF NEW YORK, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following polices, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a. Legal cause to stop, detain, arrest, and criminally charge a citizen;

b. The use of force by police officers;

c. The proper exercise of powers, including but not limited to the making of an arrest, the use of force, and the bringing of criminal charges;

d. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

e. The failure to identify and take remedial of disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

f. Police officers' use of their status as police officers to employ the use of force or to achieve ends not reasonably related to their police duties;

g. The failure of police officers to follow established policies, procedures, directives, and instructions regarding arrest, the use of force, and the institution of criminal charges under such circumstances as presented by this case;

h. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers; and

i. These practices among New York City police officers of instituting false charges against individuals from instituting civil claims.

<div align="center">

**COUNT III**

**LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,**

**RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,**

**CARLOS THOMAS, and CHRISTAIN HERNANDEZ**

**FEDERAL CONSTITUTIONAL CLAIMS**

</div>

69. The violations of plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, plaintiff's damages, and/or the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendant CITY OF NEW YORK, which has encourages, tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices and customs and

<div align="center">30</div>

to the need for more of different training, supervision, investigation or discipline in the areas of:

a. Legal cause to stop, detain, and/or arrest a citizen;

b. Police officers' duties and responsibilities to engage in proper investigation techniques;

c. Police officers' constitutional duties to disclose the prosecution expulpatory information;

d. The hiring and retention of officers who are unqualified for their employment position; and

e. The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers.

### COUNT IV

### LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ

### FEDERAL CONSTITUTIONAL CLAIMS

70. Defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS THOMAS, CARLOS PIMENTEL, and CHRISTAIN HERNANDEZ, acting jointly and in concert and conspiracy, fabricated evidence based on nothing thereby violating plaintiff's rights to a fair trial and due process of law under the Fourteenth Amendment to the U.S. Constitution.

71. Defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS THOMAS, CARLOS PIMENTEL, and CHRISTAIN HERNANDEZ, acted jointly and in concert and conspiracy and with malice, caused the institution of false charges against plaintiff thereby subjecting plaintiff to a malicious prosecution in violation of plaintiff's rights under the Fourth and Fourteenth Amendment to the U.S. Constitution.

72. Defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS THOMAS, CARLOS PIMENTEL, and CHRISTAIN HERNANDEZ, acting jointly and in concert and conspiracy, failed to disclose exculpatory information to the prosecution as required under Brady v. Maryland and its progeny thereby violating plaintiff;s rights to a fair trial and due process of law

under the Fourteenth Amendment to the U.S. Constitution.

### COUNT V

**LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,**

**RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,**

**CARLOS THOMAS, and CHRISTAIN HERNANDEZ**

### FEDERAL CONSTITUTIONAL CLAIMS

72. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Fifth Amendment to the United States Constitution, no person shall be deprived of life, liberty, or property, without due process of law.

### COUNT VI

**LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,**

**RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,**

**CARLOS THOMAS, and CHRISTAIN HERNANDEZ**

### FEDERAL CONSTITUTIONAL CLAIMS

73. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Fifth Amendment to the United States Constitution, nor shall private property be taken for public use, without just compensation.

### COUNT VII

**LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,**

**RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,**

**CARLOS THOMAS, and CHRISTAIN HERNANDEZ**

### FEDERAL CONSTITUTIONAL CLAIMS

74. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Fourth Amendment to the United States Constitution, to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported

by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## COUNT VIII

### LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,
### RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,
### CARLOS THOMAS, and CHRISTAIN HERNANDEZ
#### FEDERAL CONSTITUTIONAL CLAIMS

75. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Sixth Amendment to the United States Constitution, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have the Assistance of Counsel for his defence.

## COUNT IX

### LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,
### RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,
### CARLOS THOMAS, and CHRISTAIN HERNANDEZ
#### FEDERAL CONSTITUTIONAL CLAIMS

76. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Fifth Amendment to the United States Constitution, no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.

## COUNT X

### LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ,
### RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL,
### CARLOS THOMAS, and CHRISTAIN HERNANDEZ

## FEDERAL CONSTITUTIONAL CLAIMS

77. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Eight Amendment of the United States Constitution, excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

## COUNT XI

### LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ

### FEDERAL CONSTITUTIONAL CLAIMS

78. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ violated plaintiff's rights under the Fourteenth Amendment of the United States Constitution, all persons born or naturalized in the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws.

## COUNT XII

### LEVAR T. HENRY v. CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ

### STATE LAW CLAIMS

79. The actions of defendants CITY OF NEW YORK, GARY PEREZ, RANDYS FIGUEREO, JUAN CARRERO, CARLOS PIMENTEL, CARLOS THOMAS, and CHRISTAIN HERNANDEZ constitute the torts of negligence, assault, battery, false arrest, false imprisonment, and malicious prosecution under the laws of the State of New York.

**Wherefore**, plaintiff respectfully requests:

A. Compensatory damages as to all defendants $10,000,000 (TEN MILLION DOLLARS ZERO

   CENTS);

B. Punitive Damages as to defendants Gary Perez, Randys Figuereo, Juan Carrero,

   Carlos Pimentel, Carlos Thomas, and Christain Hernandez: $60,000,000 (SIXTY MILLION

   DOLLARS ZERO CENTS);

C. Reasonable attorneys' fees and cost;

D. Such other and further relief as may appear just and appropriate.

   Plaintiff Levar T. Henry demands a jury trial.

Dated: November 2,2018

Levar T. Henry
62 Bare Hill Road, PO Box 10
Malone, New York 12953-0010

35

17 CV 03450 (JGK) (SDA)

HENRY - against - CITY OF NEW YORK - et al.,

## EXHIBITS
## TABLE OF CONTENTS

EXHIBIT **A** : POSSIBLE WITNESSES LIST

EXHIBIT **B** : MEDICAL - HARLEM HOS., MDC, RIKERS ISLAND

EXHIBIT **C** : GRAND JURY REQUEST (NOTICE), NOTICE OF MOTION

EXHIBIT **D** : PERSONAL INJURY CLAIM FORM

EXHIBIT **E** : CAD INCIDENT

EXHIBIT **F** : NYPD MEMOBOOKS

EXHIBIT **G** : NOTICE OF VIOLATION

EXHIBIT **H** : FELONY COMPLAINT 8-19-16 14:57, ARREST NOTIF., LAW

EXHIBIT **I** : INDICTMENT 9-13-16 PART 21

EXHIBIT **J** : PRS PRELIMINARY HEARING, REALITY MAP (LOCATION)

EXHIBIT **K** : PLAINTIFF ASSOCIATION (KSAO'S)

EXHIBIT **L** : CASE SEARCH - ARREST INFO SHEET

EXHIBIT **M** : HENRY UD

EXHIBIT **N** : NETWORK VIA HORN, ESG.

EXHIBIT **O** : ATTORNEY INFORMATION

EXHIBIT **P** : CITY OF NEW YORK COMPTROLLER OFF. COMMUNICATION

EXHIBIT **Q** : POWERS, AUTHORIZATION, VDF, DMV

EXHIBIT **R** : PROPERTY RECEIPTS

EXHIBIT **S** : NYPD OMNIFORM SYSTEM - ARREST, LISS NOTE

EXHIBIT A

INTERROGATORIES RESPONSE

Below are witnesses that Levar T. Henry plans to call to testify regarding SUV
Front and Back Video Surveillance Equipment:

1. Mrs. Ladonna D. Henry, 272 West 154th Street, #5B, NY, NY 10039  (Black Female)

2. Ms. Yvonne Miller, 2065 Grand Concourse, BX, NY 10453.   (Black Female)

3. Mr. James Charleston, BX, NY (Black Male)

4. Mr. John Scanlan, 914-424-0658, PO BOX 149, BX, NY 10470 (White Male, Private Inv.)

5. Mr. Ed Stevenson, Mt. Vernon, NY 10552 (Black Male)

6. Jaedon L. Linzy (Step-son), 247 West 145th Street, #6A, NYC 10039 (Black Male)

7. Levar T. Henry Jr. (son), 247 West 145th Street, #6A, NYC 10039 (Black Male)

8. Ms. Meaghan Gerig, BX, NY 10452 (White Female)

9. Ms. Chyanne Lee, NY, NY (Black Female)

10. Mr. Bradley Littles, BX, NY (Black Male)

11. Ms. Jhamira Jenkins, 2991 8th Avenue, NY, NY 10039 (Black Female)

12. Mr. Ernest Gould, Polo Grounds, Harlem, NY 10039 (Black Male)

13. Mr. Ervin, 272 West 154th Street, NY, NY 10039 (Black Male)

15: Ms. Marquita Holloway, BX, NY (Black Female)

16. Mr. Jermaine Stevenson, S.C. (Black Male)

17. Ms. Amanda Brown, NY, NY 10039 (Black Female)

EXHIBIT B

④

Page 1  of 2

Patient Discharge Instructions
Harlem Hospital Center
506 Lenox Avenue
New York, NY 10037

Date/Time: Fri 08/19/2016 09:59        Patient Name: Henry,Levar
                                       MRN: 1523820

Attending Physician: Ravikala Puttamadu, MD
Provider: Ravikala Puttamadu, MD
Diagnosis: Other psychoactive substance dependence. uncomplicated
Tests Performed: Abdomen DX, Brain CT WO Contr, Abdomen & Pelvis CT WO Contr
Procedure(s): utox, ct, surgery consult, meds

You are being discharged Discharged to Home or Self Care Emergency Department.
Your Emergency Department provider, Ravikala Puttamadu, MD, wants you to receive additional
care.  Please make all follow up appointments for the Clinic with the ED Registration Clerk
or contact your primary doctor as directed.

Remember to take your medications, including new prescriptions, as instructed today by your
Emergency Department provider.  Please review the medications detailed on the Medication
Reconciliation page provided to you.

Your ED Provider's Instructions:
  MOTRIN FOR HEADACHE AND BACK PAIN AS NEEDED. STOP USING DRUGS, FOLLOW UP WITH PMD FOR
  FURTHER EVALUATION.

If your symptoms are not improving or begin worsening or IF WORSENS- PAIN, FEVER, COUGH,
VOMITING, WEAKNESS, FALLS, PASSING OUT, DIFFICULTY BREATHING, PARALYSIS, OTHERS, contact your
primary care provider.
If you believe that it is an emergency, immediately return to the Emergency Department or
call 911.

If you have any questions, feel free to ask your Emergency Department provider before you
leave.

Thank you for visiting the Harlem Hospital Medical Center Emergency Department.


_____         _____
Patient/Guardian Signature               Physician/Provider Signature
I have received and understand these     I have reviewed these instructions with the
instructions.                            patient.
All of my questions have been answered.





Henry, Levar
DOB: 02 Nov 1977:38Y/M
MR# 1523820-2



FALL RISK

Harlem Hospital Center
506 Lenox Avenue
New York, NY   10037

- Medical Director

ED Provider Progress Note

Henry,Levar                    EP/DIS-EP                         MRN:  1523820
Age:  40Y    M                 Height:    in.              Weight:    lbs
Requested By:  ,                                           Test Date:  19 Aug 16

Fri, 19Aug 0458 ED Provider Progress Note                    Status: complete
        Provider            : Ryan Scanlan, PA
        Attending           : Johanne Benjamin, MD
        Method of Communication  :

        Informant           : patient
        Method of Communication:

Working Diagnosis           : Acute post-traumatic headache, not
                              intractable
Note                        : 1 cm superficial left forehead lac
                              Wound cleaned out with normal saline
                              Iodine applied
                              Closed with dermabond
                                    Ryan Scanlan, PA    (19 Aug 16  0459)



**D 00150**

9 Jun 18   0931                                                       Page  1 of  2
                              Harlem Hospital Center
                        506 Lenox Avenue, New York, NY  10037
                              Radiology Department

Patient: Henry,Levar         MRN-V#: 1523820-2    DOB: 11/02/77 Age: 40Y  Sex: M

Location: 000 Adult Emergency

Order Author: Ryan Scanlan, PA


DOS: 19 Aug 16  0732      Accession #: 8223335
Abdomen & Pelvis CT  1. Without Contrast

INDICATIONS
possible swallowed drug packets


Final Report
Examination: CT of the abdomen and pelvis without oral and intravenous contrast.


Clinical indication: Possible swallowed drugs packets.

Technique: Helical CT scanning of the abdomen and pelvis was displayed in the
axial plane using contiguous 5 mm slices without oral and intravenous contrast
administration. Sagittal and coronal reconstructions were provided.

Comparison: None.

Findings:

The lung bases are clear.  There are no pleural effusions.

Evaluation of the solid abdominal viscera is limited due to the lack of
intravenous contrast.

The liver, gallbladder, adrenal glands, pancreas and spleen appear
unremarkable.

The kidneys are symmetric in size.  There is no hydroureteronephrosis.  There
are no renal calculi.  There are no contour-deforming renal masses.

Evaluation of the gastrointestinal tract is limited by the lack of oral
contrast.

There is a loop of proximal jejunum which is thickened which contains omental
fat centrally which appears to be telescoping into an adjacent jejunal loop
consistent with a transient intussusception. There is no evidence of bowel
obstruction, adjacent fluid collection, or adjacent inflammatory changes of the
mesentery.

There is no overt evidence of foreign bodies within the gastrointestinal tract.


       This report is reviewed, interpreted and electronically signed by
       Rahim Kanji, MD on .



                                                                    D 00151

Harlem Hospital Center
506 Lenox Avenue
New York, NY   10037

- Medical Director

ED Provider Initial Note


Henry,Levar                    EP/DIS-EP                      MRN: 1523820
Age:  40Y    M                 Height:    in.               Weight:   lbs
Requested By:  ,                                          Test Date: 19 Aug 16

Fri, 19Aug 0135 ED Provider Initial Note                     Status: complete
     Time Patient Seen        : 19Aug2016 0135
     Provider                 : Ryan Scanlan, PA
     Attending                : Johanne Benjamin, MD
     Preferred Language       :  English
     Informant                : patient
     Communication            :

          Method of Communication: Direct Communication in Patient's Preferred
                              Language

     ESI                      : 3
     HPI                      : 38 y/o male with unknown pmhx presents w/
                                NYPD after police found drug bags in his
                                rectum. Pt denies putting drugs in his
                                rectum. Denies consumption of etoh or illicit
                                substances. Reports that the police slammed
                                his head against a wall and he lost
                                consciousness. Uncertain of how long. Denies
                                motor-sensory defs / paresthesias. Pt also
                                reports being kneed in the chest multiple
                                times by please - now has diffuse torso pain.
                                Denies cp, palps, dyspnea. Reports pain in
                                the rectum that began after examination of
                                rectal cavity by police.

                                RoS
                                Constitional: Denies fever, chills,
                                nightsweats, weight loss
                                Eyes: Denies blurred vision
                                HENT: Denies headache, hearing loss,
                                rhinorrhea, sore throat, dysphagia
                                Neck: Denies lymphadenopathy
                                Resp: Denies dyspnea, wheezing
                                Cardiac: Denies chest pain, palpitations
                                GI: Denies nausea, vomiting, diarrhea,
                                constipation, abd pain
                                GU: Denies dysuria, discharge
                                MS: Denies arthralgias, unsteady gait



**D 00155**

9 Jun 18   0931

                          Harlem Hospital Center                    Page 2   of 3
                          Event Result Report
                          ED Triage Note


    Name: Henry,Levar          Visit #: 1523820-2    SMS #: 23115238207
    DOB: 11/02/1977 Age: 40Y   Sex: M Attend MD: Verma,Rajesh, MD (830166)
    Location: Adult Emergency - 000
Thu, 18Aug 2318 ED Triage Note                          Status: complete
        Triage Time            :    Thu, 18 Aug 2016    2318
        Life Saving Intervention?: no
        High Risk?                 : no
        Arrived By                 : ambulance
        Accompanied By             : EMS NYPD
        Preferred Language         :  English
        Method of Communication    :

        Method of Communication: Direct Communication in Patient's Preferred
                                  Language

        Informant              : patient
        Chief Complaint        : BIBEMS Post arrest
        Vital Signs            :

            Temperature        : 97.9 F (36.6 C) Route: oral
            Blood Pressure     : 108/62   mmHg
            Pulse              : 86  bpm
            Respirations       : 16
            O2 Sat             : 96  %

        Suspected Infection?      : no
        Alteration of Mental Stat: no
        Pain Score                : 6
        High Risk Status          : No
        Resources                 : many
        Danger VS?                : no
        ESI                       : 3
        Allergy/ADR               :

            Document Allergies/ADR:
            Medication Allergy     : No Known Med Allergies

        Medication History     : not taking meds including herbals and
                                  over-the-counter.
        Past Medical History   : no significant history
        Previous ED Visits     : 2/28/2007
        Suspected Abuse?       : no
        Fall Risk              :

            Fall Risk Indicators: difficulty ambulating
            Fall Prevention Plan: Fall Prevention Plan Initiated

        Suicide Screen          :

            Columbia Suicide Screen : Mental Status: alert and oriented In the



**D 00159**

9 Jun 18   0931                                              Page 3   of 3

Harlem Hospital Center
Event Result Report
ED Triage Note

Name: Henry,Levar          Visit #: 1523820-2     SMS #: 23115238207
DOB: 11/02/1977  Age: 40Y  Sex: M  Attend MD: Verma,Rajesh, MD (830166)
Location: Adult Emergency - 000
Thu, 18Aug 2318 ED Triage Note -- cont'd

                              past month, have you wished you
                              were dead or wished you could go to
                              sleep and not wake up?: no In the
                              past month,have you actually had
                              any thoughts of killing yourself?:
                              no Have you ever done
                              anything,started to do
                              anything/prepared to do anything to
                              end your life?: no

Behavioral Screen        : cooperative, calm
Assessment               : Alert and oriented person,place and time
                           Glasgow Coma Scale 15 Moves all extremities
                           No acute distress  Patient BIBEMS after ebing
                           arrested. While in custody, patient had drugs
                           removed from his rectum in NYPD. Patient
                           states he was then assaulted by NYPD. Patiwnt
                           c/o rectal pain, bilateral shoulder pain and
                           back pain. Patient ntoed with laceration to
                           left eyebrow with mild swelling, abrasion to
                           right elbow and left wrist. Bilateral arms
                           tender to touch. Patient with  shackles to
                           bilateral ankles and handcuffs to right
                           wrist. Handcuffed face down on the bed.
Restraints               : Patient brought in to ED in handcuffs. (Note:
                           All pts in handcuffs must be seen by Medical
                           ED before going to CPEP)
Triaged To               : Medical ED
Rapid HIV                : Not Offered
Synthetic Cannabinoid Use: no
                                              (18 Aug 16   2322)

Otoo,Brittny, RN   (ESOF)



**D 00160**

Harlem Hospital Center
506 Lenox Avenue
New York, NY   10037

- Medical Director

General Surgery Consult

Henry,Levar                    EP/DIS-EP                        MRN:  1523820
Age:  40Y    M                 Height:      in.          Weight:      lbs
Requested By:  Sharma,Shruti, MD                         Test Date:  19 Aug 16

Fri, 19Aug 0409 General Surgery Consult                  Status: complete
        Systolic BP            :
        Diastolic BP           :
        Pulse                  :
        Respiration            :
        Temperature            : 97.9
        Consult Type           : diagnostic
        Request                : New
        Referring MD           : Hector Depaz, MD
        Referral Problem       : Acute post-traumatic headache, not
                                 intractable
        Reason for Consult     : foreign body rectum
        Current Meds           : Tdap 11-64y (Adacel) Vaccine;
        Consultant Findings    : CC  he was assaulted by NYPD. while in
                                 custody, patient had drugs removed from his
                                 rectum c/o rectal pain, bilateral shoulder
                                 pain and back pain

                                 Hpi : Pt is a 38 yo man who was in NYPD
                                 custody and was noted to be in possession of
                                 drugs. As per police , when they found out pt
                                 had drugs , he put drug bags in his rectum .
                                 However pt denies. He is c/o pain and itching
                                 in is his rectum, had a large bowel movement
                                 in ED. He states that he was assaulted by
                                 NYPD , punched in his face and head ,
                                 sustained a small bruise /laceration over
                                 forehead. ? LOC, no headache , neck pain ,
                                 chest pain , abdominal pain , weakness or
                                 numbness . CT obtained in negative for any
                                 injury  The ED physician removed a bag of
                                 drugs from his undergarments but did not find
                                 any object on rectal exam . However pt with
                                 highly un cooperative with exam
                                 AXR was the obtained which shows questionable
                                 foreign body ? gentilia
                                 Surgery asked to evaluate



D 00146

Harlem Hospital Center
506 Lenox Avenue
New York, NY   10037

- Medical Director

General Surgery Consult

Henry,Levar                          EP/DIS-EP                    MRN:   1523820
Age:  40Y    M                       Height:      in.            Weight:    lbs
Requested By:  Sharma,Shruti, MD                                 Test Date:  19 Aug 16

Fri, 19Aug 0409 General Surgery Consult -- cont'd
                              IMPRESSION:

                     5.3 x 4.5 cm dense structure at the mid lower
                     pelvis, likely genitalia.

                     However, rectal foreign body cannot be
                     excluded.

                     Correlate clinically.

                     Ct BRAIN : No evidence of mass,
                     hydrocephalus, acute intracranial hemorrhage,
                     abnormal extra-axial fluid collection, or
                     obvious cortical infarct in the brain.

                     A:? foreign body in rectum

                     Plan :

                     Please get CT abdomen /pelvis without oral
                     contrast


                     ADDENDUM Dr. Sarosh Khan 8/19/2016 10:27 AM
                     Abdomen and pelvis CT
                     1. Telescoping of proximal jejunal loop into
                     the adjacent jejunum consistent with
                     transient intussusception. Correlate
                     clinically.
                     2. No visualization of foreign bodies.

                     CDW Dr. Depaz
                     No radiological evidence of foreign body
                     No acute surgical intervention at this stage
                     F/Up in Surgery Clinic
Consultant Diagnosis      : Acute post-traumatic headache, not
                            intractable



**D 00148**

Harlem Hospital Center
506 Lenox Avenue
New York, NY   10037

- Medical Director

General Surgery Consult

Henry,Levar                    EP/DIS-EP                    MRN:  1523820
Age:  40Y   M                  Height:   in.               Weight:   lbs
Requested By:  Sharma,Shruti, MD                           Test Date:  19 Aug 16

Fri, 19Aug 0409 General Surgery Consult -- cont'd
                               Other psychoactive substance dependence,
                               uncomplicated
        Resident             : Shruti Sharma, MD
        Attending            : Hector Depaz, MD
        Attending Attestation : I have reviewed the history, exam, assessment
                                and plan of the Resident/Fellow.
        Attending Note       : Surgical consult placed to rule-out rectal
                               foreign body.

                               Patient complained of pain in anus.

                               On examination patient noted to be afebrile.
                               Left forehead laceration sutured in ED.
                               DRE: not done (patient refused).

                               CT scan abdomen and pelvis showed transient
                               jejunal intussusception but no foreign body.

                               Patient is for follow-up in clinic.
        Level of Service/E&M : 99251   INITIAL INPATIENT CONSULT NEW/ESTAB PT
        20 MIN

                               Hector Depaz, MD    (19 Aug 16  1849)



D 00149

Patient Summary                                                                                    Page 1 of 1

**NYSID:** 07839962Z   **BookCase:** 3491609157

**HENRY, LEVAR**
272 WEST 154TH ST, 5B, 1B, NEW YORK, NY 10039

**DOB:** 11/02/1977   **Age:** 40 Y   **Sex:** Male      **Primary Insurance:**   Medicaid
                                                        **PCP:**
**Home:**                                               **Account Number:**   29547
**Work:**
**Cell:**
**Email:**
**Advance Directive:**

**Allergies :**  N.K.D.A

**Medical History**

**Active Problem List**

| Code | Name | Specify | Notes | Added On | Modified On | Modified By |
|------|------|---------|-------|----------|-------------|-------------|
| V70.0 | ROUTINE MEDICAL EXAM | | | | 08/22/2014 | Aronov, Alexander |
| V11.9 | HX-MENTAL DISORDER NOS | | | | 11/23/2010 | Park, Yungdo |
| F43.21 | Adjustment disorder with depressed mood | | | | 06/21/2017 | Acee, Anna |
| 799.9 | Diagnosis deferred | | | | 05/17/2017 | Vultaggio, Cerissa |
| 913.4 | INSECT BITE FOREARM | | | | 08/22/2014 | Aronov, Alexander |
| 724.5 | Backache | | | | 08/22/2014 | Aronov, Alexander |
| 338.11 | Pain due to trauma, acute | | | 08/21/2016 | 08/21/2016 | Grandoit, Jean |
| 784.0 | Headache | | | 08/21/2016 | 09/12/2016 | Ogbenna, Edith |
| 780.4 | Dizziness and giddiness | | | 08/21/2016 | 01/19/2017 | Rosenthal, Joshua |
| RI50 | SMI - NO | | | 08/25/2016 | 06/12/2017 | Green, Ciara |
| 924.9 | CONTUSION NOS | | | 09/07/2016 | 09/07/2016 | Harris, Brenda R |
| 525.9 | Toothache | | | 09/12/2016 | 09/12/2016 | Ogbenna, Edith |
| 784.0 | Headache | | | 09/15/2016 | 09/15/2016 | Flores-Clemente, Bessie |
| 724.5 | Back pain | | | 09/15/2016 | 09/15/2016 | Flores-Clemente, Bessie |
| 700 | Callosity | | | 10/10/2016 | 10/10/2016 | Estrada, Yaneth |
| 757.5 | NAIL ANOMALIES NEC | | | 10/10/2016 | 10/10/2016 | Estrada, Yaneth |
| RI301 | Dental Class II Restorative and/or Periodontal Treatment Indicated | | | 10/27/2016 | 10/27/2016 | McEachrane, Sandra |
| RI300 | Dental Class I Extractions Indicated | | | 10/27/2016 | 02/09/2017 | Gravesande, Terry |
| 782.0 | Numbness | | | 11/03/2016 | 11/03/2016 | Kolla, Sai |
| 728.85 | Spasm of muscle | | | 12/07/2016 | 12/07/2016 | Flores-Clemente, Bessie |
| 388.8 | DISORDERS OF EAR NEC | | | 12/14/2016 | 12/14/2016 | Gornish, Ira |
| 300.9 | Psychiatric situation | | | 12/14/2016 | 12/14/2016 | Gornish, Ira |
| V62.6 | REFUSAL OF TREATMENT | ENT | | 12/28/2016 | 02/15/2017 | Bernard, Jean-Luc |
| 521.02 | DENTAL CARIES - DENTINE | | | 01/10/2017 | 03/08/2017 | Satter, Quazi |
| 307.81 | Tension headache | | | 01/18/2017 | 01/18/2017 | Comas, Carole |
| 110.4 | Athlete's foot | | | 01/19/2017 | 01/19/2017 | Pantea, Nicholas |
| 536.8 | Dyspepsia NOS | | | 01/19/2017 | 01/19/2017 | Pantea, Nicholas |
| 724.5 | Low Back Pain | | | 04/19/2017 | 04/19/2017 | Janvier, Jean-Joseph |
| 367.1 | Myopia | | | 05/11/2017 | 05/11/2017 | Scholnick, Barry |

**D 00169**

Summary View for HENRY, LEVAR



Insurance: Medicaid

**HENRY, LEVAR**

NYSID: 07839962Z  BookCase: 3491609157
Facility Code: MDC  Housing Area: RR
38 Y old Male, DOB: 11/02/1977
Account Number: 29547
272 WEST 154TH ST, 5B, 1B, NEW YORK, NY-10039

Appointment Facility: Manhattan Detention Center

08/21/2016

Appointment Provider: Justin Wilson, MD

**Current Medications**
Taking
● Ibuprofen 400 MG Tablet Total Dose: 400mg Twice a Day with stat dose, stop date 08/26/2016, Drug Source: Pharmacy

**Past Medical History**
None

**Allergies**
N.K.D.A.

**Reason for Appointment**
1. Headache, body ache

**History of Present Illness**
Notes::
    8:00PM Nursing Note: Responded to Emergency in housing area, Stewart LPN, Harris PCA, Wilson MD. Pt found lying prone on bed in cell. Pt complained of a headache, dizziness, and neck pain. Pt placed to sitting position. VS taken as reported below. Pt transported to clinic for further evaluation. SS, LPN
    Pt states that he was hit in his head with sticks, he was pushed against the wall. he was taken to Harlem Hospital and had a CT of the head. He was dicsharged. he states he is still dizzy. He sattes his pain is ? its soreness. he did get up for lunch. States he did not get up for dinner.
NURSING ROS:
    Medicated with 800mg Ibuprofen PO as per stat order @8:23pm, tolerated. Israel, J. RN.
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
    Non-Intake Acuity Scale *4: Three or more Chronic Conditions addressed as in (3) OR Emergency response in the facility OR acutely ill patients requiring phone consultation with Urgi, specialist, phone call to community provider*

Vital Signs

| | BP | |
|---|---|---|
| L Arm:105/69 | 08/21/2016 08:01:27 PM | Shauna-Kaye Stewart |
| 120/88 | 08/21/2016 08:00:41 PM | Roneisha Harris |
| | Pulse | |
| 72 | 08/21/2016 08:01:27 PM | Shauna-Kaye Stewart |
| 78 | 08/21/2016 08:00:41 PM | Roneisha Harris |
| | RR | |
| | 08/21/2016 08:01:27 | Shauna- |

| 16 | PM | Kaye Stewart |
| 14 | 08/21/2016 08:00:41 PM | Roneisha Harris |
| **Temp** | | |
| 98.6 | 08/21/2016 08:01:27 PM | Shauna-Kaye Stewart |
| 98.6 | 08/21/2016 08:00:41 PM | Roneisha Harris |
| **SaO2** | | |
| 98 | 08/21/2016 08:00:41 PM | Roneisha Harris |
| **Glucose** | | |
| 104 | 08/21/2016 08:00:41 PM | Roneisha Harris |

**Examination**
General Examination:
    GENERAL APPEARANCE: well-developed, well-hydrated, well-nourished, no acute distress.Uncooperative with exam..
    HEENT: minor bruise on right head, no other head trauma appreciatedFundi: groosly WNL, EOMI, anicteric sclera.
    HEART: PMI:-, normal, RATE:-, regular, RHYTHM:-, regular, HEART SOUNDS:-, normal S1S2, MURMURS:-, none.
    CHEST: CHEST WALL:-, non-tender.
    LUNGS: clear to auscultation bilaterally.
Neurological:
    Uncooperative with Neuro exam.
    Knows who is the President.
    He knows his birthdate.
    He knows the date and year.
    He knows he is at Manhattan house
    He said his Mom is Nadine--she died.

**Assessments**
1. Headache - 784.0 (Primary)
2. Dizziness and giddiness - 780.4

**Treatment**
**1. Headache**
Start Ibuprofen Tablet, 400 MG, Total Dose: 800mg, Orally, Stat, 0 days, Drug Source: RN/LPN DOT

**Follow Up**
08/22/2016 (Reason: headache / Dizziness)

Disposition: General Population
Notes: If any changes neurologically, consider Neuro eval or as seen appropiate. Vitals in Half an hour. if WNL D/C from Clinic.

Patient: HENRY, LEVAR   DOB: 11/02/1977   Progress Note: Justin Wilson, MD   08/21/2016
Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

Appointment Provider: Justin Wilson, MD

Electronically signed by Justin Wilson MD on 08/21/2016 at 09:40 PM EDT

Sign off status: Completed

**Addendum:**
08/21/2016 10:53 PM Peguero, Francisco > Repeated vital signs before D/C from clinic: BP-102/67, O2-98, Temp-98.2, PR-72

Manhattan Detention Center
125 White Street
New York, NY 10013
Tel: 347-774-7000
Fax: 347-774-8088

Patient: HENRY, LEVAR   DOB: 11/02/1977   Progress Note: Justin Wilson, MD   08/21/2016

Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)

# HEALTH + HOSPITALS

Insurance: Medicaid

## HENRY, LEVAR

NYSID: 07839962Z  BookCase: 3491609157
Facility Code: GRVC  Housing Area: 11A
39 Y old Male, DOB: 11/02/1977
Account Number: 29547
272 WEST 154TH ST, 5B, 1B, NEW YORK, NY-10039

Appointment Facility: George R. Vierno Center

01/19/2017                                    Appointment Provider: Joshua Rosenthal, MHC

### Current Medications
**Taking**
- Remeron 15 MG Tablet Total Dose: 15 mg At Bed time, stop date 02/08/2017, KOP: No, Drug Source: Pharmacy-Non Carry, Notes: Pharmacy-Non Carry
- Naprosyn 250 MG Tablet Total Dose: 500 mg BID, stop date 01/23/2017, KOP: No, Drug Source: Pharmacy
- Miconazole Nitrate 2% Cream Total Dose: 1 TUBE, APP Twice a day, stop date 02/02/2017, Drug Source: Pharmacy
- Alum & Mag Hydroxide-Simeth 400-400-40 MG/5ML Suspension Total Dose: 1 BOTTLE, APP Twice a Day, stop date 01/24/2017, Drug Source: Pharmacy

### Past Medical History
None

### Reason for Appointment
1. TPR and MH Clinicians Progress Note

### History of Present Illness

#### TEMPLATES:

TPR AND MH CLINICIANS PROGRESS NOTE
**SUBJECTIVE:**
Subjective
= pt seen for TPR at his cell in the bing. Pt reports he expects to be leaving the box Jan 24, and on Jan 23 he returns to ct for his drug possession case in which he is curr offered 3 1/2 yrs. pt reports not willing to accept the time believing there are many problems related to his case and esp since he recently copped out to 3 yrs fro his drug sale case which he believes makes no sense that he should be given more time for a drug possession case than for a drug sale case. Pt also states that he has a parole violation charge and is curr offerd 3 yrs for that which he is also unwilling to accept esp if not run concurrent. pt reports coping as best he can, still suffering pain when the police beat him up when searching rro drugs, takes his meds that helps him sleep, and was told he will be seen again next week hopefully before he leaves the box., pt also complained of dizziness and light headedness (possibly vertigo) as well as ringing in his ear and hoping to see an ENT doctor to further evaluate him.

#### TPR INFO:
TPR info
Date of review: 01/19/2017
Date of next review: 02/16/2017

#### GP/MO:
GP/MO
Please select GP or MO: GP

#### ASSESSMENT OF PROBLEMS AND NEED 1:
Problem and need 1
Problem # 1: DEPRESSED MOOD
Goal: Elevate mood to euthymic.
Objective # 1: Establish rapport with mental health staff and engage appropriately in treatment

D 00255


**HEALTH + HOSPITALS**

Insurance: Medicaid

# HENRY, LEVAR

NYSID: 07839962Z   BookCase: 3491609157
Facility Code: OBCC   Housing Area: 5L
39 Y old Male, DOB: 11/02/1977
Account Number: 29547
272 WEST 154TH ST, 5B, 1B, NEW YORK, NY-10039

Appointment Facility: Otis Bantum Correctional Center

04/02/2017                              Appointment Provider: Asm Choudhury, MD

**Current Medications**
Taking
• Remeron 15 MG Tablet Total Dose: 15 mg
At Bedtime, stop date 04/04/2017, KOP: No,
Drug Source: Pharmacy-Non Carry, Notes:
Pharmacy-Non Carry

**Past Medical History**
None

**Allergies**
N.K.D.A

**Reason for Appointment**
1. Medication

**History of Present Illness**
TEMPLATES:

     PSYCHIATRY - MEDICATION REEVALUATION
SUBJECTIVE:
     Subjective
     = *Patient states, " I got headache" it has been there for 8 months. its hard fro him to be seen by internist. remeron helps him sleep amd in depression. , Pt request to continue medications, Pt denies SI/HI and is stable for GP with MH follow up., Pt coping well., Pt interacts w/o incident in MH clinic, Pt denies any SI HI AH VH PI*

BRIEF SUMMARY ASSESSMENT AND PLAN:
     Brief Summary Assessment and Plan
     Brief Summary Assessment and Plan (describe in Notes field):
*39 years old male with adjustment d/o , appears coping well. no depressive sx. will coontinue current meds.*

     Examination

OBJECTIVE:
     Objective
     = *., Pt appears to be functioning well on the unit, Pt scheduled this date for FU. Pt sitting calmly and appropriately for interview, No specific complaints, PT WAS WELL RELATED, PT APPEARED ALERT AND RESPONSIVE, PT DENIES ANY SI HI AH PI VH, PT COPING WELL, PT GOAL DIRECTED, PT INTERACTS W/O INCIDENT IN MH CLINIC, PT OBSERVED PRE AND POST MH INTERVIEW PT IS IN NO DISTRESS*
MENTAL STATUS:
     Appearance:
     = *Chronological Age, Normal Weight .*

     Behavior:
     = *Cooperative, Relates Well, Accessible, Good Eye Contact .*

     Mood:

Patient: HENRY, LEVAR   DOB: 11/02/1977   Progress Note, Asm Choudhury, MD   04/02/2017

6/22/2017 01:18 PM

Tray #    060836

Customer Account No.

Location Code: 1
Invoice No.3491509157

Store Tray  NY GRVC
Patient Name  Henry, Levar

Order Date    06/22/2017    Promise Date
User ID:  02 National Eye Care

Make: Pair
Lens Color: Clear/White
Frame Item:  Ben 52 Grey

Lens Type   Single Vision (F/N)
Edge Type

Lens Material: Plastic (CR-39®) 1.498

Polish Edges  No      Pin Bevel     No

| | Sphere | Cylinder | Axis | Far PD | Near PD | Oc. Ht | | | |
|---|---|---|---|---|---|---|---|---|---|
| R | -2.25 | | | 38.5 | 38.5 | 24.74 | | | |
| L | -1.75 | -0.50 | 70 | 38.5 | 38.5 | 24.74 | | | |
| Pattern No. | 000005 | | A    54.02 B.    48.47 E.D.    61.54 EG A/del    35.38 Cir (R)    171.62 Cir (L)    171.78 DBL:    16.29 | | | | | | |

Job Options.

Right                        Comments            Left

+ ++                                                   + ++



NYC DEPARTMENT OF HEALTH & MENTAL HYGIENE
**CORRECTIONAL HEALTH SERVICES**

## PROGRESS NOTE

EVERY ENTRY <u>MUST</u> BE DATED AND **SIGNED**

Henry, Levar
369160 09157
07839 9622
DOB: 11/2/77

| DATE | OBSERVATIONS |
|------|--------------|
| | MD note / Sick call |
| 5/16/17 | Patient presents to clinic Complaining of Back Pain |
| 6:30 PM | VS: BP: 98/59  P: 83 R: 14 |
| | Temp: 98.2°F |
| | O: Patient is Alert and oriented x3 |
| | HEENT: PERRLA, throat clean |
| | Lungs Clear |
| | Heart Reg Rate |
| | Abdomen Benign |
| | Back Mild tenderness in Lumbar Area in Paraspinal muscles |
| | A/P: Back Pain Naproxen 500mg BID Flex as needed |
| | R Henry MD |
| | R Che Ry, MD |

**D 00410**

# eCW System Downtime:DATE
## Medical provider Punch List
Please complete on sheet per encounter.

## Demographics

| | |
|---|---|
| Name: | |
| B & C Number: | 30916092752 *(handwritten)* |
| NYSID Number: | |
| Date of Birth: | 11/9/17 *(handwritten)* |

## Vitals

| | |
|---|---|
| Pulse: | 83 |
| Temperature: | 98.2 |
| Respiration: | 16 |
| Blood Pressure: | 89/52 |

## Problem List

1. Bedbug Bites *(handwritten)*
2.
3.
4.
5.
6.
7.
8.
9.
10.

## Ordered Labs

1. N/A *(handwritten)*
2.
3.
4.
5.

## Diagnostic Imaging

1. N/A *(handwritten)*
2.
3.

## Future appointments

1. N/A *(handwritten)*
2.
3.

## Outgoing Referrals

1. N/A *(handwritten)*
2.
3.

## Medications

1. Naproxen 500mg (BID) *(handwritten)*
2.
3.
4.
5.
6.
7.
8.

## Allergies

N/A *(handwritten)*

D 00411



Attachment B

Form: #7101R, Eff.: 09/10/12 Rel.: Dir #3376 – page 1



City of New York – Department of Correction

# INMATE GRIEVANCE AND
# REQUEST PROGRAM STATEMENT FORM

| Inmate's Name: | Book & Case #: | NYSID # (optional): |
|---|---|---|
| LEVAR HENRY | 3491609157 | 07B39962Z |

| Facility: | Housing Area: | Date of Incident: | Date Submitted: |
|---|---|---|---|
| MDC | 6N | 10/25/16 | 10/25/16 |

Report of Grievance:

NEED TO GET TO SICK CALL. I HAVE A BROKEN TOOTH. BACK
AND HEADACHES. IN ORDER TO GET PAIN MEDS I HAVE TO GO
TO SICK CALL. THE ONES THE OFFICERS GIVE OUT AT THE
UNIT ARE NOT STRONG ENOUGH.

Action Requested by Inmate:

I WOULD LIKE TO GO TO SICK CALL. THEY NEVER CALL IT
IN MY UNIT.

Please read below and check the correct box:

Do you want to have your statement edited for clarification by IGRP staff?   [ ] Yes  [ ] No
Do you want the IGRP staff to write the grievance or request for you?        [ ] Yes  [ ] No
Have you filed this grievance or request with a source other than us?        [ ] Yes  [X] No
Did you report this matter to our institution?                                [ ] Yes  [ ] No

Inmate's Signature:                          Date of Signature: OCT 25, 2016

| Time Stamp Below: | Grievance and Request Reference #: | Category: |
|---|---|---|
| | | |

Inmate Grievance and Request Program Staff's Signature:

EXHIBIT C

**CRIMINAL COURT OF THE CITY OF NEW YORK**
**COUNTY OF NEW YORK, PART AR3**
------------------------------------------------------------------

People of the State of New York

        *-against-*

      LÍNDA HENRY

                Defendant
------------------------------------------------------------------

Docket No.: 2018405 0250

**Cross Grand Jury Notice**

     PLEASE TAKE NOTICE that defendant wishes to appear as a witness in his/her own behalf at any grand jury proceeding concerning the above-referenced felony complaint and,

     PLEASE TAKE NOTICE that pursuant to CPL 190.50 (1)(a) the defendant requests that the District Attorney serve notice on the undersigned of any scheduled grand jury presentation concerning the above referenced complaint.

Dated: ~~January~~ 8/19, 2016
      New York, New York

                                Yours,

                                PERCY D. GAYANILO, ESQ.
                                Attorney for Defendant
                                305 Broadway
                                14th Floor
                                New York, New York 10007

Attn:  NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE
       Assistant District Attorney,  BRIAN RODRIGUEZ

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

LAMAR HENRY

Defendant:

ORDER TO PRODUCE
DOCKET NUMBER

TO:   THE COMMISSIONER, NEW YORK CITY DEPARTMENT OF CORRECTION
      THE WARDEN OF THE NEW YORK COUNTY GRAND JURY

        The defendant, who is committed to the custody of the Commissioner of the New York City
Department of Correction by a securing order of this Court, has served notice on the District
Attorney of an intention to testify before the grand jury that will consider defendant's case.

        Thereupon, the District Attorney moved this Court, pursuant to CPL § 550.10(2) (a), for this
order to produce defendant at the grand jury on _____ 20___ the CPL 180.80
date, which is the date defendant is scheduled to waive immunity and testify before the grand jury.

        Upon the application of the District Attorney, with notice to defendant's attorney, it is hereby

        ORDERED, that the Commissioner of the New York City Department of Correction produce
defendant, NYSID No. _____ on the above date to the 12th floor detention facility at
the Criminal Courts Building, 100 Centre Street, in New York County, and it is further

        ORDERED, that the Commissioner of Correction release defendant to the temporary
custody of the grand jury warden so that defendant can be brought before the grand jury and, in the
presence of his attorney, waive immunity and to testify, and it is further

        ORDERED, that the grand jury warden, upon completion of defendant's testimony before
the grand jury, return defendant to the custody of the Commissioner of Correction.

                                                            HON. LAURIE PETERSON
                                            _____
                                                            Judge/Justice

Dated:   New York, New York
         _____, 20___

PC Form 151 (10/99)

D 00100

# EXHIBIT D

(10)



New York City Comptroller
Scott M. Stringer

Office of the New York City Comptrol
1 Centre Stre
New York, NY 1000

# Personal Injury Claim Form

Form Version:   NYC-COMPT-BLA-PII-I

Claim must be filed in person or by registered or certified mail within 90 days of the occurence at the NYC
Comptroller's Office, 1 Centre Street, Room 1225, New York, New York 10007. It must be notarized. If claim is
not resolved within 1 year and 90 days of the occurrence, you must start legal action to preserve your rights.
TYPE OR PRINT

I am filing:    ⊗ On behalf of myself.

○ On behalf of someone else. If on someone else's
behalf, please provide the following information.

| | |
|---|---|
| Last Name: | HENRY |
| First Name: | LEVAR |
| Relationship to the claimant: | |

○ Attorney is filing.

**Attorney Information (If claimant is represented by attorney)**

| | |
|---|---|
| Firm or Last Name: | |
| Firm or First Name: | |
| Address: | |
| Address 2: | |
| City: | |
| State: | |
| Zip Code: | |
| Tax ID: | |
| Phone #: | |
| Email Address: | |

## Claimant Information

| | |
|---|---|
| *Last Name: | HENRY |
| *First Name: | LEVAR |
| Address: | 125 WHITE STREET |
| Address 2: | |
| City: | N.Y. |
| State: | N.Y. |
| Zip Code: | 10013 |
| Country: | USA |
| Date of Birth: | 11/02/1977    Format: MM/DD/YYYY |
| Soc. Sec. # | ▬▬▬▬▬ |
| SSN: (Medicare #) | |
| Date of Death: | Format: MM/DD/YYYY |
| Phone: | 2126663993 OR 7182954002 |
| Email Address: | LEVARHENRYTWELVE@GMAIL.COM |
| Occupation: | DRIVER/PARKING ATTENDANT |
| City Employee? | ⊗ Yes   ○ No   ○ NA |
| Gender | ⊗ Male   ○ Female   ○ Other |

2016 SEP 15 PM 2:44

*equired field(s).



 **New York City Comptroller**
Scott M. Stringer

Office of the New York City Comptroller
1 Centre Street
New York, NY 10007

**Medical Information**

| | | |
|---|---|---|
| 1st Treatment Date: | 08/18/2016 | Format: MM/DD/YYYY |
| Hospital/Name: | HARLEM HOSPITAL | |
| Address: | 506 LENOX AVE | |
| Address 2: | | |
| City: | NY | |
| State: | NY | |
| Zip Code: | 10037 | |
| Date Treated In Emergency Room: | 08/18/2016 | Format: MM/DD/YYYY |

Was claimant taken to hospital by an ambulance?    ⊗ Yes   ○ No   ○ NA.

**Employment Information (if claiming lost wages)**

| | |
|---|---|
| Employer's Name: | ⬤⬤⬤⬤ AND ⬤⬤⬤⬤⬤ |
| Address | 280 W 155th |
| Address 2: | |
| City: | NY |
| State: | NY |
| Zip Code: | 10039 |
| Work Days Lost: | TBA |
| Amount Earned Weekly: | TBA |

**Treating Physician Information**

| | |
|---|---|
| Last Name: | PUUttemade |
| First Name: | RAVIKALA |
| Address: | HARLEM HOSPITAL |
| Address 2: | |
| City: | ny |
| State: | ny |
| Zip Code: | 10037 |

*notes required field(s).*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 23
-------------------------------------------------------------X
The People of the State of New York,                        :
                                                            :
                    - against -                             :         **NOTICE OF MOTION**
                                                            :
                                                            :
LEVAR HENRY,                                                :
                                                            :
                    Defendant.                              :         Indictment No.: 3584N-2016
                                                            :
-------------------------------------------------------------X

     **PLEASE TAKE NOTICE**, that upon the annexed affirmation of PERCY D. GAYANILO, ESQ., attorney for the Defendant, LEVAR HENRY, and upon the Indictment and all the proceedings had herein, the undersigned will move this court on the 12th day of December, 2016, at 9:30 a.m. in the forenoon of that day or as soon thereafter as counsel can be heard for an order granting the following relief:

    1. Dismissal of the Indictment pursuant to Article 210 C.P.L.

    2. Inspection and reduction of counts in the Indictment pursuant to Article 210 C.P.L. and release of Grand Jury minutes.

    3. Bill of Particulars pursuant to Section 200.95 C.P.L.

    4. Discovery pursuant to C.P.L. Article 240; (and Brady Material).

    5. Suppression from use at trial of evidence, pursuant to Article 710 C.P.L.

    6. Sandoval Hearing

    7. Leave to file additional motions

    **PLEASE TAKE FURTHER NOTICE**, that the defendant demands that upon proceeding, hearing, or trial in this case in which the people call witnesses, that as to each such witness that the people call to testify, the people instruct said witness to bring to court or the

people cause to be brought into court the following:

      1.     All written or otherwise recorded statements of the witness made in connection with this case, including but not limited to memo book; arrest, complaint, and follow-up forms. People v. Rosario, 9 N.Y.2d 286 (1961); Butts v. Justices, 37 A.D.2d 607, (2nd Dept. 1971); People v. Malinsky, 15 N.Y.2d 86 (1965); People v. Ranghelle, 69 N.Y.2d 56 (1986).

      2.     Any record, paraphrase or summary of any statement made by the witness, written by or at the request of the People, whether or not the People believe any such writing to constitute work product as such decision is one to be made by the court. People v. Consolazio, 40 N.Y.2d 446, 387 N.Y.S.2d 62 (1976).

Dated: September 28, 2016
      New York, New York

                           Respectfully submitted,

                           GAYANILO LAW FIRM, PLLC


                           _____

                           PERCY D. GAYANILO, ESQ.
                           Attorney for Defendant
                           305 Broadway
                           14th Floor
                           New York, New York 10007
                           (212) 571-5910

To:    BRIDGET G. BRENNAN
       Special Assistant District Attorney
       New York, New York 10013
       ADA Brian Rodriguez

       CLERK, SUPREME COURT, PART 23
       New York County

EXHIBIT E

```
Date:08/18/16   Call:3868   CAD Incident ID:162313868 --- UNKNOWN CONDITION
PDJob#: I16081824586   NYFDJob#: ....               Triage Status:
Dispatch Type: OTHER        Initial Type: OTHER      Final Type: OTHER
CRO:#8737 (AR00)   DISP:#0887 (MN5P)   Held?:NO   Relay?:   Segment:6   Area:M8   Atom:032M
Incident Triage Description: NO TRIAGE OF ANY KIND WAS DONE OR NOT APPLICABLE (NOT AR01-AR25, CR01-
                             CR16).

Locations: 2770 FREDERICK DOUGLASS BLVD ,MN


21:29:05    PDCOMP          (PD07) P6SP8 -- 1 UNDER - ARREST READ (8737)
21:29:05    PDADR-OK        (8737)Verified: 254 W 154 ST ,MN  From: 254 W 154 ST,MN
21:29:05    PDCHG-EMS-ATOM  (ADR4) 032NA FROM LAT: +040.828091 LON: -073.937093 ZIP: 10039 (8737)
21:29:11    PDADR-VIEWED    (8737) AR00 F (8737)
21:29:34    ENTRY           (8737) NO MORE INFORMATION
21:29:34    FINAL           (8737)ACK SENT TO PD FOR I16081824586    - JOB FIRST SENT TO RELAY
21:29:34    DISP-DISPLAY    (0887)
21:29:34    SUGG-UNITS31    (0887) %16E3 %16A3 ~16E3 ~09A3 %12E3 .Dual
21:29:34    SUGG-UNITS2     (0887) %13W3 ~12Y3 ~13Y3 .Dual %11V3 %11Y3
21:29:34    SUGG-UNITS3     (0887) %13W3 %16E3 %16A2 ~16E3 ~09A3 ~12Y3
21:30:14    SUGG-UNITS1     (0887) %16E3 %16A3 ~16E3 %12E3 ~09A3 .Dual
21:30:14    SUGG-UNITS2     (0887) %13W3 ~12Y3 ~13Y3 .Dual %11V3 %11Y3
21:30:14    SUGG-UNITS3     (0887) %13W3 %16E3 %16A3 ~16E3 ~12Y3 %12E3
21:30:14    ASSIGNED        (0887) 16E3 #5729 KLEB EMT, KYLE STA 13 #1100 LYNCH EMT, ROBERT STA 13 89
21:30:14    ETA-84          (0887) 16E3-213514 030CB 032NA
21:30:18  * DMSG-RECEIVED   (5729) 16E3
21:30:24  * ENROUTE         (5729) 16E3
21:35:26  * ONSCENE         (5729) 16E3
21:39:20    CONTACT         (0894) 16E3 UCR+020 , GOING TO THE HOUSING BASE
21:39:47    CHANGED-LOC     (0894) 254 W 154 ST ,MN TO 2770 FREDERICK DOUGLASS BLVD ,MN
21:39:47    CHANGED-ATOM    (0894) 032NA TO 032MA
21:39:55    NEW-LOCATION    (0894) 16E3 2770 FREDERICK DOUGLASS BLVD ,MN
21:39:55    ENROUTE         (0894) 16E3
21:40:03    ENROUTE         (0894) 16E3
21:40:26    ONSCENE         (0894) 16E3
21:55:06    REQ-UNIT        (0894) Req Unit 81K3 from MN5P , 16E 2ND PT -- D0894:
21:57:27    SUGG-UNITS1     (0843) .Dual >10H3 %13E3 >81K3 ~11C3 %10C3
21:57:27    SUGG-UNITS2     (0843) %16Z3 %13W3 .Dual %13Y3 %12X3 %81Y3
21:57:27    SUGG-UNITS3     (0843) %16Z3 %13W3 .Dual %13Y3 %12X3 >10H3
21:57:27    ASSIST          (0843) 81K3 #7560 CHEN EMT, MING HN:18 #7181 SEALEY EMT,PRESTON HN:18 97  %
                            2770 FREDERICK DOUGLASS BLVD ,MN
21:57:27    ETA-84          (0843) 81K3-220426 024MC 032MA
21:57:31  * DMSG-NOT-RCVD   (7181) 81K3 LAT: 40804410 LONG: 73968880 GPS ATOM: 024MC AREA: M8
21:57:48  * ENROUTE         (7181) 81K3
22:08:14  * ONSCENE         (7181) 81K3
22:08:39    CONTACT         (0894) 16E3 UCR+020 , XPC
22:30:08    CONTACT         (0894) 16E3 UCR+020 , XPC
22:30:14    CONTACT         (0894) 81K3 UCR+020 , XPC
22:41:29  * SUGH-MASK       (7181) 81K3 GED/07 CADULT/07 CPEDS/07P OBS/07 STROKE/07 BURNS/07 STEMI/17
                            LVAD/17 SAFE/07 PEDP/07E AEDP/07E PTRAUM/07P ATRAUM/07 HBARIC/14 PGED/07
                            CLOSEST/07 AREA/07 17 27 20
22:45:02  * SUGH-MASK       (5729) 16E3 GED/07 CADULT/07 CPEDS/07P OBS/07 STROKE/07 BURNS/07 STEMI/17
                            LVAD/17 SAFE/07 PEDP/07E AEDP/07E PTRAUM/07P ATRAUM/07 HBARIC/14 PGED/07
                            CLOSEST/07 AREA/07 17 27 20
22:45:09  * HDSP-MASK       (5729) 07 MN 16E3 BLS FOR GED /SUGH
22:45:09  * GIVE-DISPO      (5729) 16E3 82B
22:48:16  * HDSP-MASK       (7181) 07 MN 81K3 BLS FOR GED /SUGH
22:48:16  * GIVE-DISPO      (7181) 81K3 82B
22:51:38  * 10-81           (5729) 16E3
22:51:38    MILEAGE         16E3 1.0
23:09:05    CONTACT         (0878) 81K3 UCR+020 , NRR 4 UFD
23:17:40    CONTACT         (0878) 16E3 UCR+020 , NRR
23:22:04  * 10-97           (5729) 16E3
23:24:06    CONTACT         (0887) 81K3 UCR+020 , NRR
```

**D 00046**

```
Date:08/18/16   Call:3868   CAD Incident ID:162313868 --- UNKNOWN CONDITION
PDJob#: I16081824586       NYFDJob#: ....                   Triage Status:
Dispatch Type: OTHER              Initial Type: OTHER       Final Type: OTHER
CRO:#8737 (AR00)   DISP:#0887 (MN5P)    Held?:NO  Relay?:    Segment:6   Area:M8    Atom:032M
Incident Triage Description:NO TRIAGE OF ANY KIND WAS DONE OR NOT APPLICABLE (NOT AR01-AR25, CR01-
                            CR16).
Locations: 2770 FREDERICK DOUGLASS BLVD ,MN


23:24:38     CONTACT       (0887) 81K3 UCR+020 , AVL SHOWS UNIT AT H07
23:31:13   * 10-81         (7181) 81K3
23:31:13     MILEAGE       81K3 1.0
23:31:18   * 10-98         (7181) 81K3
23:31:18   * CLOSED        (7181)
00:04:23     PD-EVENT      ASSIGNED/92C D
```

**FIRE DEPARTMENT - CITY OF NEW YORK**

I hereby certify pursuant to CPLR 2305 and 2307 that this
document is a true and accurate copy of a Fire Department
record kept in the regular course of Fire Department business.

Signature: _L Vega_          Date: _6/14/18_

Print Name: _L Vega_         Unit: _CDLS_

D 00047

# EXHIBIT F



CITY OF NEW YORK
**POLICE DEPARTMENT**

**B** 299469

Name _To Russell_

Tax Reg. No. _963255_

Date Opened _3/2/16_

Supervisory Officer _Sgt. 72_

Date Closed _7/26/16_

Supervisory Officer _____

PD 112-145 (07-09)



A *Away* 8/18/16    AC  1730 X0205

2117: Z order by Count 1  in Zones

      Hold  To  Hold / 10-2

1730: 8H  C  BASE  / 62A

0205: EOT  To  Tail  4608

D 00030



CITY OF NEW YORK
POLICE DEPARTMENT

B 241901

Name PO Thomas C

Tax Reg. No. 952230

Date 03/31/16

Supervisory Officer Sgt Sawyer

Date Closed 4/01/16

Supervisory Official Sgt Sanchez

PD 113-145 (07/98)

D 00031



Thur 08/18/16  Tou. 1730x0300

2110   85 backing Crime Housing
@ 154 + Macomb
2117   92 x 2 by PO Perez //
2130   84 @ PSAC / 61 A
2300   10-6/A @ St Luke
Hospital with PO Carrera. He
injured his hand during the
8C
0135   2315  84 St Luke Hospital
0135   9/98/ 10-2
0200   84 PSAC
0205   EOT

CITY OF NEW YORK
POLICE DEPARTMENT

Name

Date Opened

Date Closed

Supervising Officer

Supervising Officer

D 00022

9/10 I'm Stop Fee intent To
Sale of Narcotics Heroin

Thursday 8/18/16 / 230 X 030S
Assignment PG96



LeVar 11/8/17 8:9a w 154 st
St Apt 5B N/J

Fax @6A Resting C Post

2110  92cy & Lt. Hernandez Notify/Transporting J/M to PSH6

2125  84 @ PSH6/69 st

8145  Authorized Strip Search by Lt Hernandez Positive

2250  Both PCBRs taken to Harlem Hosp

2255  bt# 2016-32-5553

2305  online# mb 1857 283 P for Det. G

2315  online# mb 1857 286 0 for det. Hervey LaVar

2330  voucher# 1000839196 for Arrest evidence cellphone

2335  voucher# 1000839200 for Arrest Evidence re isc currency

2345  voucher# 1000839306 for Arrest Evidence For 12 bags of Crack cocaine. Det Hervey

2355  Voucher# For 1000839306 rock cocaine. Det Hervey

2355  Voucher# For 1000839167 for cellphone



head phone Foe neck Bold pater
040S Fat Po R
81/03/17

CITY OF NEW YORK
POLICE DEPARTMENT                    B 234222

Name _____    Tax Reg. No. _____

Date Opened _____    Supervisory Officer _____

Date Closed _____    Supervisory Officer _____

D 00026



# EXHIBIT G

(DOM 9004 (04/07))

STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (DOCCS)
NOTICE OF VIOLATION

TO: _Henry Levar_      INST.# _10A-4556_

WARRANT# _752 826_      NYSID# _078399622_

You are charged with violating the conditions of your release in the manner specified on the attached violation of release report.

A preliminary hearing on these charges has been scheduled on _9/22/16_ at _9 am_ at _Rikers RUC_
     Date      Time      Place

Should you waive a preliminary hearing or should probable cause be found at this hearing that you have violated any condition of your release in an important respect, a

final hearing on these charges will be held on _10/5/16_ at _9 u_ at _RUC_
     Date      Time      Place

In the event that your return to the State of New York cannot be effected for the hearing as scheduled above due to circumstances beyond the Department's control, you will be afforded a preliminary hearing and final revocation hearing at such time as you may become available for return on the Department's warrant.

You have the right to a preliminary and final revocation hearing. A preliminary hearing may be held to determine whether there is probable cause to believe that you violated one or more of the conditions of your release in an important respect. At this hearing you are entitled to appear and speak on your own behalf; introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses. Proof of your conviction of a crime committed after your release shall constitute probable cause for the purpose of the preliminary hearing. You may be represented by counsel. It is your responsibility to obtain counsel. Your waiver of this preliminary hearing is the equivalent to a finding of probable cause.

In the event you are convicted of either a misdemeanor or a felony offense committed while under community supervision and a preliminary hearing has not been completed, you will not be entitled to the preliminary hearing on the basis of the new conviction. Any preliminary hearing which may have been scheduled may therefore be cancelled upon your conviction for such misdemeanor or felony.

Following the establishment of probable cause, the Board of Parole or its designee will review your case and may order that you be held for a final revocation hearing.

At the final revocation hearing, the presiding officer will determine whether there is a preponderance of evidence to support each of the charged violations. At this hearing, you have the right to be represented by counsel; to speak on your own behalf; have the right to introduce letters and documents; present witnesses who can give relevant information; and confront and cross-examine adverse witnesses against you. At this hearing, you also have the right to present mitigating evidence relevant to your restoration to community supervision.

In the event you are convicted of a felony offense committed while under community supervision and you receive a new indeterminate or determinate sentence, any final revocation hearing which has been scheduled for you may be cancelled. In such instances, the Board of Parole may issue a final declaration of delinquency based upon that conviction and sentence.

In the event the Board of Parole issues a final declaration of delinquency, you will be served with a copy of that determination together with a copy of the commitment.

Should you be convicted of a crime committed after your release, it is the intention of the Department of Corrections and Community Supervision to introduce evidence of your conviction at the time of your revocation hearing.

A request to adjourn either scheduled hearing should be made in the case of a preliminary hearing, at least three (3) days, and in the case of a final hearing, at least seven (7) days prior to the hearing, in writing, to the local area office. Requests for adjournments made at the hearing will only be granted for good cause shown.

Violation of Release Report received:

_____      _9·15·16_
Signature      Date

All persons charged with a violation are required to be present at all proceedings regarding that violation of community supervision which are authorized by the Board of Parole. Any voluntary failure on your part to be present at any of these proceedings may result in a finding that your failure to appear was a voluntary, knowing and intelligent waiver of your right to appear. Should such a finding be made, a hearing in absentia can be held and a final determination be made regarding the charges pending against you, including, if necessary, a time assessment because of the violation of community supervision.

☑ I DO wish to have a preliminary hearing      ☐ I do NOT wish to have a preliminary hearing
_9·15·16_
Date

_9/15/16_      _____
Date      Signature of Releasee

     _Clarke_
     Signature of Witness

If you cannot afford an attorney and wish to have counsel at your preliminary hearing, sign and detach this form. It is your responsibility to mail the form to the address shown on the form. If you request counsel at your preliminary hearing, you must mail this form IMMEDIATELY.

TO: _Parole Defense_      RE: _Levar Henry_
     _199 Chambers St_      Name
     _ny ny_      WARRANT# _752826_

I am an alleged community supervision violator being held at: _____

I am scheduled for a preliminary hearing to be held on _____ at _____ at _____
     Date      Time      Place

I have waived my preliminary hearing. A final hearing has been scheduled for _____
     Date

_____ at _____
Time      Place

I cannot afford an attorney and request that I be assigned counsel. _____
Releasee      Name

EXHIBIT H

Page 1 of 3

(16)

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK                    FELONY

-against-

1. Levar Henry (M 38), 18B                              ADA Brian Rodriguez
2. Edward Goldfaden (M 48), MCDS                        212-815-0445

                                          Defendants.

Police Officer Gary Perez, Shield 27357 of the Housing Bureau PSA 6, states as follows:

*The defendants are charged with:*

| | | |
|---|---|---|
| 1 | PL 220.16(1) | Criminal Possession of a Controlled Substance in the Third Degree (defendant #1: 1 count) |
| 2 | PL 215.40(1)(a) | Tampering with Physical Evidence (defendant #2: 1 count) |
| 3 | PL 195.05 | Obstructing Governmental Administration in the Second Degree (defendant #1: 1 count) (defendant #2: 1 count) |
| 4 | PL 205.30 | Resisting Arrest (defendant #1: 1 count) |

On or about August 18, 2016 at about 9:17 P.M., across from 70 Macombs Place in the County and State of New York, the defendant knowingly and unlawfully possessed a narcotic drug with intent to sell it; the defendant, with intent that it be used and introduced in an official proceeding and a prospective official proceeding, knowingly made, devised and prepared false physical evidence; the defendants intentionally prevented and attempted to prevent a public servant from performing an official function by intimidation, physical force and interference and by means of an independently unlawful act; the defendant intentionally attempted to prevent a police officer and peace officer from effecting an authorized arrest of himself and another person.

*The factual basis for these charges are as follows:*

At the above time and place, I observed defendant LEVAR HENRY approach defendant EDWARD GOLDFADEN and hand him small objects in exchange for United States currency. I then approached GOLDFADEN, identified myself as a police officer, and asked GOLDFADEN to show me what HENRY had just given him. Despite my request, GOLDFADEN refused to open his hand. Moments later, I observed two (2) small

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

FELONY

-against-

1. Levar Henry (M 38),
2. Edward Goldfaden (M 48),

ADA Brian Rodriguez
212-815-0445

Defendants.



plastic bags each containing a white rocky substance in GOLDFADEN's hand, which he then raised to his mouth and swallowed.

I then observed Police Officer Randys Figuereo, Shield# 19407 of the Housing Bureau PSA 6, in a struggle with HENRY, in that HENRY was refusing to be handcuffed by stiffening his arms and continuously reaching towards the back of his shorts despite orders to stop resisting. I am informed by Officer Figuereo that he observed a total of three (3) small plastic bags each containing a white rocky substance fall from HENRY's shorts during this struggle.

After the above-described events, I observed HENRY get into the back seat of a marked NYPD RMP. I am informed by Police Officer Carlos Pimentel, Shield# 07608 of the Housing Bureau PSA 6, that after arriving at the precinct, he recovered one (1) small plastic bag containing a white rocky substance from the area where HENRY was seated, that no other individuals were seated in that area with HENRY, and that Officer Pimentel did not observe said plastic bag prior to HENRY being placed in the RMP.

I am informed by Officer Pimentel as well as Police Officer Carlos Thomas, Shield# 21295 of the Housing Bureau PSA 6, that they recovered a total of (8) small plastic bags each containing a white rocky substance from the holding cell in which HENRY was placed after arriving at the precinct, that no other individuals were in the cell with HENRY, and that they did not observe said plastic bags prior to HENRY being placed in the cell.

I am informed by Police Officer Juan Carrero, Shield# 06160 of the Housing Bureau PSA 6, that pursuant to a search of HENRY's person at the precinct, he recovered one (1) large white rocky substance wrapped in plastic.

I am informed by Police Officer Willie Thompson, Shield# 15823 of the Housing Bureau PSA 6, that a physician's assistant of a local hospital recovered one (1) small plastic bag containing a white rocky substance from HENRY's rectum during an examination.

I believe all of the substances described above are cocaine based upon: my professional training as a police officer in the identification of drugs, my prior experience as a police officer making drug arrests and an observation of the packaging, which is



(18)

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

1. Levar Henry (M 38),
2. Edward Goldfaden (M 48),

Defendants.

FELONY

ADA Brian Rodriguez
212-815-0445

characteristic of this type of drug.

False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

PO P

Police Officer Gary Perez

8/19/16
Date

1457
Time

2826272

# Criminal Court of the City of New York

## New York County

## Felony Complaint

The People of the State of New York

vs.

**DEFENDANT:**

**CHARGES:**

**DOCKET NUMBER:**

2016NY050250

**FELONY**

Levar Henry (M 38)
M16657286   08/18/2016 21:17
272 WEST 154 STREET
MANHATTAN NY

M16657286

PL 220.16(1)
PL 195.05
PL 205.30

Edward Goldfaden (M 48)
M16657283   08/18/2016 21:17
2960 8 AVENUE
MANHATTAN NY

M16657283

PL 215.40(1)(a)
PL 195.05

Interpreter: Language _____   Screener: RODRIGUEZ, BRIAN - SNP 30/60

## Notices Served at Arraignment:

☐ CPL 190.50 - Grand Jury
☐ Cross Grand Jury
☐ Waive Cross Grand Jury
☐ CPL 710.30(1) (A) - Statement
☐ CPL 710.30(1) (B) - Identification
☐ CPL 250.20 - Alibi
☐ PL 450.10(48 hrs /15 days) - Property

☐ OTHER: _____

## Adjournment:

Part: _____ Date: _____
☐ CPL 180.80/30.30 Waived

## Bail Condition:

____/____/____
(Ins. Co. Bond)   (Cash)   (Other) _____

☐ Surety Exam - 48 hours/72 hours
☐ Temporary Order of Protection
☐ ART. 730 Exam Ordered
☐ Medical Attention
☐ Protective Custody
☐ Suicide Watch
☐ Psychiatric Evaluation

| Arresting Officer | Court Reporter | Date | Part |
|---|---|---|---|
| GARY PEREZ | | | |

Judge: _____



NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

ARREST NOTIFICATION

TO:    AREA OFFICE:     MANHATTAN II                DATE: 08-19-2016
       PO:  CARTER-CLARKE,PATINA                    TIME: 11:26 AM
       SPO:  CAMACHO,ALFONSO
       AREA SUPERVISOR:  ROSADO,RICHARD

FROM:  PARTNER - ALERTS SYSTEM

RE:    HENRY,LEVAR                                  NYSID:  07839962Z

THE ABOVE INDIVIDUAL WAS ARRESTED ON: 08-18-2016    CRIME DATE: 08-18-2016

USING THE NAME: HENRY,LEVAR

FOR:
       PL  22016    01    B FEL    CRIM POSS CONTR SUBSTANCE 3RD(REV 09/79)
       PL  22039    01    B FEL    CRIM SALE CONTR SUBSTANCE 3RD(REV 09/79)
       PL  22031    00    D FEL    CRIM SALE CONTR SUBSTANCE 5TH(REV 09/79)
       PL  19507    00    E FEL    OBSTRUCTING GOVERNMENTAL ADMIN 1ST
       PL  20530    00    1 MISD   RESISTING ARREST

BY:    NYCPD PCT 032

COURT OF ARRAIGNMENT: CRIM CRT NEW YORK
COURT CONTROL NUMBER: 67785934K    AGENCY ID NUMBER:    M16657286

REPORTED ADDRESS                   PARTNER ADDRESS

272 WEST 154 STREET                █████ ██ ███
MANHATTAN                NY        NEW YORK                NY

TRAN #:           FAX #:

SUPERVISION STATUS OF THIS CASE IS: REPORTING

NO WARRANT IS ISSUED
NO WANTED NOTICE IS POSTED FOR THIS CASE

PLEASE REFER TO HIT NUMBER 07839962Z20160818001 IF CONTACTING THE
QUALITY & CONTROL ALERTS UNIT

The People of the State of New York, Respondent, v Azim Hall, Appellant.
COURT OF APPEALS OF NEW YORK
10 N.Y.3d 303; 886 N.E.2d 162; 856 N.Y.S.2d 540; 2008 N.Y. LEXIS 684; 2008 NY Slip Op 2676
No. 29
February 7, 2008, Argued
March 25, 2008, Decided

People of the State of New York against Luis Villegas
SUPREME COURT OF NEW YORK, BRONX COUNTY
46 Misc. 3d 232; 994 N.Y.S.2d 534; 2014 N.Y. Misc. LEXIS 4667; 2014 NY Slip Op 24328
0044/2013
October 29, 2014, Decided

Notice:

THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE PRINTED
OFFICIAL REPORTS.

THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING RELEASE OF THE
FINAL PUBLISHED VERSION.

Judges: APRIL A. NEWBAUER, Acting Justice of the Supreme Court.

CASE SUMMARY As neither the indictment filed with the court nor the copies subsequently reviewed contained
the signature of the grand jury foreperson, as the clerk's affidavit did not refer to the indictment or the actions she
took, and as the People did not produced a signed copy or the foreperson to clarify the anomaly, the indictment
was dismissed.

OVERVIEW: HOLDINGS: [1]-The indictment charging with criminal sale of a controlled substance in or near
school grounds had to be dismissed because neither the indictment filed with the court nor the copies
subsequently reviewed contained the signature of the grand jury foreperson, the minutes of the supreme court
arraignment did not refer to the indictment being signed, the clerk's affidavit did not refer to the indictment or any
particular actions that she took, the grand jury minutes did not reveal that the jurors voted a true bill, and upon
defendant's timely CPL 210.30 motion, it was incumbent on the People to produce the grand jury foreperson or
demonstrate equivalent evidence of a signed indictment to clarify the anomaly.

OUTCOME: Indictment dismissed.

LexisNexis Headnotes

*Criminal Law & Procedure > Grand Juries > Procedures > Return of Indictments > Procedural*

# EXHIBIT I

D 00055

Counsel

IND. #
No. 2016NY050250

Adjourn Date 9/13/2016 Part 21

THE PEOPLE OF THE STATE OF NEW YORK

Filed           day of           , 2016

Pleads

-against-

Bail

Levar Henry,

Defendant.

INDICTMENT

CRIMINAL POSSESSION OF A CONTROLLED
SUBSTANCE IN THE FOURTH DEGREE

P.L. §220.09(1)

BRIDGET G. BRENNAN
Special Assistant District Attorney

A TRUE BILL

Foreperson

ADA RODRIGUEZ/PART 21

SUPREME COURT OF THE STATE OF NEW YORK
CITY OF NEW YORK
COUNTY OF NEW YORK
CRIMINAL TERM:  SPECIAL NARCOTICS PARTS

THE PEOPLE OF THE STATE OF NEW YORK

-Against-

Levar Henry,

                                        Defendant.

     THE GRAND JURY OF THE SPECIAL NARCOTICS COURTS OF THE CITY OF

NEW YORK, by this indictment, accuses the defendant of the crime

of CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE FOURTH

DEGREE, P.L. §220.09(1), committed as follows:

     Said defendant, in the County of New York, City of New York,

on or about August 18, 2016, knowingly and unlawfully possessed

one or more preparations, compounds, mixtures and substances

containing a narcotic drug, to wit, cocaine, and said

preparations, compounds, mixtures or substances were of an

aggregate weight of one-eighth ounce or more.

                              BRIDGET G. BRENNAN
                    Special Assistant District Attorney

D 00054

EXHIBIT J



Henry Levar                    ···· ···DIN # 10A4556·          NYSID # 07839962Z

1

NYS DEPARTMENT OF CORRECTIONAL SERVICES

AND COMMUNITY SUPERVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

                    In the Matter of

                    LEVAR HENRY

                    DIN #        10A4556

                    NYSID #      07839962Z

                    WARRANT #    752826

                    INSTITUTION:  SING SING C.F.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LOCATION:            Rikers Island Judicial Center
                     East Elmhurst, New York


TYPE OF HEARING:     Preliminary Hearing

DATE:                September 23, 2016

BEFORE:              SHARON BURNETT, Hearing Officer

APPEARANCES:         PATINA CARTER-CLARKE, Parole Officer
                     Shield 1951
                     Manhattan II Area Office

                     ERIN NAGY, Attorney for Parolee
                     Legal Aid Society

                     LEVAR HENRY, Parolee

HEARING REPORTER:    EILEEN ARRIGO, Hearing Reporter

                     PRECISE COURT REPORTING
          (516) 747-9393  (718) 343-7227  (212) 581-2570
                     PRECISE COURT REPORTING
          (516) 747-9393 (718) 343-7227 (212) 581-2570



Henry Levar                    DIN # 10A4556           NYSID # 07839962Z

2

1          THE HEARING OFFICER:   Are you Levar Henry?

2          THE PAROLEE:  Yes.

3          THE HEARING OFFICER:   This is a preliminary hearing

4     in the matter of Levar Henry, NYSID number 07839962Z,

5     warrant number 752826.

6          Good morning, Mr. Henry.  My name is Sharon Burnett.

7     I'm a preliminary hearing officer designated by the Board of

8     Parole to preside over this preliminary hearing.

9          Because testimonies will be taken, could you please

10    raise your right hands.

11         Do you swear or affirm any testimony or statements

12    you are about to give today will be the truth, the whole

13    truth and nothing but the truth?

14         P.O. CARTER-CLARKE:   I do.

15         THE PAROLEE:  Yes.

16         THE HEARING OFFICER:   Please state your names for

17    the record starting with the parole officer.

18         P.O. CARTER-CLARKE:   Parole Officer Patina

19    Carter-Clarke, shield 1951, Manhattan II.

20         MS. NAGY:   Erin Nagy, Legal Aid Society.

21         THE PAROLEE:   Levar Henry.

22         THE HEARING OFFICER:   Mr. Henry, this preliminary

23    hearing, it's an informal administrative hearing.  It's a

24    hearing to determine whether or not there's reasons to

25    believe or probable cause to believe that you violated at



Henry Levar                    DIN # 10A4556              NYSID # 0783996Z

3

1    least one of the conditions of your release in an important

2    respect.

3         If probable cause is found, you will be held over for

4    the final hearing.  If probable cause is not found within 15

5    days of the lodging of your warrant, your warrant will be

6    vacated, and you will return to parole supervision.

7         Do you understand?

8         THE PAROLEE:   Yes, ma'am.

9         THE HEARING OFFICER:   Ms. Nagy, have you discussed

10   with Mr. Henry his rights and the ways in which he may plead

11   at this hearing?

12        MS. NAGY:   I have.

13        THE HEARING OFFICER:   At this time I will review the

14   documents.

15        I have a one-page violation of release report,

16   charges one through eight.

17        I have one and a half pages of case summary signed by

18   Officer Clarke on 9-15-2016, also signed by Senior Parole

19   Officer Camacho.

20        I have a certificate of release to parole supervision

21   in the name of Levar Henry.  Document was signed by

22   Mr. Henry on December 20, 2012.

23        Finally, I have a notice of violation in the name of

24   Levar Henry.  NYSID number and warrant number were the

25   numbers I read into the record.  Where the document has



Henry Levar                    DIN # 10A4556              NYSID # 07839962Z

4

1    violation of release report received, it is signed by

2    Mr. Henry, and it is dated 9-15-2016, at which time

3    Mr. Henry was scheduled to have his preliminary hearing held

4    by having the box checked that states I do wish to have a

5    preliminary hearing, signed on 9-15-2016 by Mr. Henry and

6    Officer Clarke.

7              Did you receive these documents, Mr. Henry?

8         THE PAROLEE:   Yes, ma'am.

9         THE HEARING OFFICER:   Parole Officer Clarke, did you

10   prepare the violation of release report?

11        P.O. CARTER-CLARKE:   I did.

12        THE HEARING OFFICER:   Is such a document prepared

13   during the normal course of business as a parole officer?

14        P.O. CARTER-CLARKE:   Yes.

15        THE HEARING OFFICER:   Do you attest to the

16   truthfulness and accuracy of the contents therein?

17        P.O. CARTER-CLARKE:   Yes.

18        THE HEARING OFFICER:   At this time I will take into

19   evidence as State's Exhibit-1 the violation of release

20   report as an accusatory instrument.

21             Are you ready to proceed, officer?

22        P.O. CARTER-CLARKE:   I am.

23        THE HEARING OFFICER:   What charge will you proceed

24   on?

25        P.O. CARTER-CLARKE:   Charge number six.

(29)

Henry Levar                  DIN # 10A4556              NYSID # 07839962Z

5

1          THE HEARING OFFICER:    Please read that charge into

2     the record.

3          P.O. CARTER-CLARKE:    Levar Henry is in violation of

4     rule number 11 in that on August 18, 2016 at approximately

5     9:17 p.m. opposite 70 Macombs Place, New York City, the

6     subject was found in possession of an illegal substance, to

7     wit, several bags of crack cocaine without medical

8     authorization.

9          THE HEARING OFFICER:    Mr. Henry's plea?

10         MS. NAGY:    First I'm going to object to the charge

11    as being vague in its nature.  It didn't specify how many

12    bags, it just says several, and my client has a right to be

13    aware of the exact accusations against him.

14         THE HEARING OFFICER:    He's on notice for having bags

15    of crack cocaine, Counsel.  Mr. Henry's plea, please.

16         MS. NAGY:    Not guilty.

17         THE HEARING OFFICER:    Officer, please present your

18    case.

19         P.O. CARTER-CLARKE:    I have been supervising

20    Mr. Henry for several years now, over three years.  His

21    overall adjustment to parole supervision I would say was

22    marginal because he has several arrests during that time

23    period for domestic violence issues.

24         MS. NAGY:    Objection.

25         THE HEARING OFFICER:    One second.



Henry Levar                    DIN # 10A4556              NYSID # 0783996 2Z

6

1          P.O. CARTER-CLARKE:   I'm leading up to it.

2          THE HEARING OFFICER:   I have to rule on the

3      objection.   What is the objection?

4          MS. NAGY:   It's not relevant.   Anything that's

5      happened in the last three years other than the fact that

6      she's been supervising him for over three years is not

7      relevant to this charge.

8          THE HEARING OFFICER:   It may be not relevant to the

9      charge, but it's relevant to the fact that Officer Clarke is

10     testifying as to his --

11         P.O. CARTER-CLARKE:   Adjustment.

12         THE HEARING OFFICER:   -- adjustment on parole

13     supervision.   It's not an offer of proof to the charge.   I

14     will take the testimony.

15         P.O. CARTER-CLARKE:   A warrant for drug-related

16     activity is still pending.   Mr. Henry reported as scheduled.

17         On August 19th, the Division received an arrest

18     notice indicating that Mr. Henry had been arrested on August

19     18th for criminal possession of a controlled substance,

20     criminal sale of a controlled substance, obstructing

21     government administration --

22         MS. NAGY:   I'm going to object --

23         P.O. CARTER-CLARKE:   -- and resisting arrest.

24         MS. NAGY:   -- to the arrest charges.

25         THE HEARING OFFICER:   It's just arrest charges,



Henry Levar                    DIN # 10A4556              NYSID # 07839962Z

                                                                    7

1      Counsel.  I will take it.

2            MS. NAGY:   The charge alleges possession.

3            THE HEARING OFFICER:   But Officer Clarke is

4      testifying to the charges that he was charged with when he

5      was arrested on August 18th.

6            Continue, parole officer.

7            P.O. CARTER-CLARKE:   I would like to submit a copy

8      of the arrest notification.

9            THE HEARING OFFICER:   Do you have the police officer

10     here?

11           P.O. CARTER-CLARKE:   I do.

12           THE HEARING OFFICER:   We'll deal with that then.

13     Any questions for Officer Clarke?

14     MS. NAGY:   Yes.

15     You indicated you have been supervising my client for

16     over three years?

17           P.O. CARTER-CLARKE:   Yes.

18     MS. NAGY:   Can you tell me exactly when you began

19     supervising him?

20           P.O. CARTER-CLARKE:   The exact month?

21     MS. NAGY:   Yes.

22           P.O. CARTER-CLARKE:   Roundabout -- it was 2012.

23     Roundabout December or so.

24     MS. NAGY:   You indicated that he's been out

25     reporting that entire time?



Henry Levar                 DIN # 10A4556            NYSID # 07839962Z

8

1          P.O. CARTER-CLARKE:   Besides the arrest, yes.

2          MS. NAGY:   I have no further questions right now.  I

3     may have questions after the officer testifies.

4          THE HEARING OFFICER:   You may bring in your witness.

5          (The witness entered the hearing room.)

6          THE HEARING OFFICER:   Please raise your right hand

7     to be sworn.

8          Do you swear or affirm that the testimony you are

9     about to give will be the truth, the whole truth and nothing

10    but the truth?

11         THE WITNESS:   I do.

12         THE HEARING OFFICER:   Please state your name, shield

13    and command.

14         THE WITNESS:   Police Officer Figuereo, PSA6, 19407.

15         THE HEARING OFFICER:   Officer Clarke, your witness.

16         P.O. CARTER-CLARKE:   Good afternoon, Officer

17    Figuereo. Were you working on the date of August 18, 2016,

18    and if so, in what capacity?

19         THE WITNESS:   Yes.  I was working as a police

20    officer.

21         P.O. CARTER-CLARKE:   What area were you covering?

22         THE WITNESS:   PSA6 in the confines of the 32

23    precinct.

24         P.O. CARTER-CLARKE:   Do you recall any contact with

25    Mr. Henry?



Henry Levar            •            DIN # 10A4556            NYSID # 07839962Z

9

1           MS. NAGY:   Objection.   Leading.

2           P.O. CARTER-CLARKE:   With the defendant?

3           THE WITNESS:   Yes.

4           MS. NAGY:   I'm going to object to the leading

5     question.

6           THE HEARING OFFICER:   Do you recognize the person to

7     Officer Clarke's right?

8           THE WITNESS:   Yes.

9           THE HEARING OFFICER:   Who do you recognize him to

10    be?

11          THE WITNESS:   He was arrested on August 18th.

12          THE HEARING OFFICER:   What's his name?

13          THE WITNESS:   Levar Henry.

14          THE HEARING OFFICER:   Tell us about the arrest.

15          THE WITNESS:   Me and my partner were conducting

16    patrol in plainclothes, unmarked vehicle.   We observed

17    Mr. Levan's conduct, what appeared to be a hand-to-hand with

18    another apprehended defendant.   We approached them.

19    Mr. Levan was resisting.

20          MS. NAGY:   Objection.

21          THE HEARING OFFICER:   Tell us what he did.

22          THE WITNESS:   Well, he was holding something in his

23    fist.   He wouldn't let me cuff him.   He wouldn't open his

24    fist.   He was trying to put something in his pocket.   I was

25    trying to pull it out.   Three bags of crack fell out.

THE HEARING OFFICER: You didn't know it was crack then?

THE WITNESS: We had observed the hand-to-hand so we approached him.

THE HEARING OFFICER: What fell was what? What did it look it?

THE WITNESS: Crack.

THE HEARING OFFICER: You didn't know it was crack.

P.O. CARTER-CLARKE: Describe the testimony. What was it in?

THE WITNESS: Ziplock bags containing a white powder inside.

THE HEARING OFFICER: Containing a white powdery substance?

THE WITNESS: Correct.

THE HEARING OFFICER: Continue, parole officer.

P.O. CARTER-CLARKE: In your experience, you have seen this type of substance before?

THE WITNESS: Yes.

P.O. CARTER-CLARKE: You believed it was what?

THE WITNESS: Crack cocaine.

MS. NAGY: I'm going to object to the leading nature of the questions.

THE HEARING OFFICER: Just ask direct questions, please.


PRECISE COURT REPORTING
(516) 747-9393 (718) 343-7227 (212) 581-2570



Henry Levar                    DIN # 10A4556              NYSID # 07839962Z

                                                                    11

1            P.O. CARTER-CLARKE:   What was the substance?

2            MS. NAGY:   Objection.  Speculation at this point.

3       It's already been asked and answered.

4            P.O. CARTER-CLARKE:   What happened after that?

5            THE WITNESS:   After that we brought him back to the

6       precinct, and we recovered more crack cocaine.

7            MS. NAGY:   Objection.

8            THE HEARING OFFICER:   More powdery substance because

9       you don't know it was crack yet.

10           THE WITNESS:   Correct.

11           P.O. CARTER-CLARKE:   The powdery substance, what

12      happened to it after you got to the precinct and you

13      observed it falling on the street and now --

14           MS. NAGY:   Objection.  Compound question.

15           P.O. CARTER-CLARKE:   What did you do with the

16      substance after that?

17           THE WITNESS:   My partner vouchered it.

18           P.O. CARTER-CLARKE:   It was vouchered.  What does

19      voucher mean in case they don't know?

20           THE WITNESS:   It's when we safeguard it.  We put it

21      in an envelope and send it out.

22           THE HEARING OFFICER:   I didn't hear that.

23           THE WITNESS:   It's when we put it in an envelope.

24      We staple it with the person's name as arrest evidence and

25      send it out to the lab.



Henry Levar                    DIN # 10A4556              NYSID # 0783996622

12

1        P.O. CARTER-CLARKE:   You said it was a document that

2   was performed and you have verification.

3        MS. NAGY:   Objection.

4        THE HEARING OFFICER:   Ask questions.

5        P.O. CARTER-CLARKE:   The document was vouchered,

6   yes?

7        MS. NAGY:   Objection.  There's been no testimony as

8   to a document.

9        THE HEARING OFFICER:   Was the substance vouchered?

10       P.O. CARTER-CLARKE:   Was the substance vouchered?

11       THE WITNESS:   Yes.

12       P.O. CARTER-CLARKE:   May I submit a copy of the

13  officer's voucher to verify that the alleged substance was

14  vouchered?

15       THE HEARING OFFICER:   Show it to counsel.

16       P.O. CARTER-CLARKE:   Yes (handing).

17       MS. NAGY:   Who is Gary Perez?

18       P.O. CARTER-CLARKE:   My partner.  The arresting

19  officer.

20       MS. NAGY:   So you didn't actually voucher it?

21       THE WITNESS:   No.  That's what I stated before.

22       MS. NAGY:   I'm going to object to this coming in.

23  It's not prepared by the witness, and his name doesn't

24  appear in the invoicing or arresting area of the document,

25  and therefore, he has no --

37

Henry Levar                     DIN # 10A4556            NYSID #, 07839962Z

13

1          THE HEARING OFFICER:   Well, where were you when the

2     substance was being processed?

3          THE WITNESS:   My partner was the one who was

4     processing.

5          MS. NAGY:   Objection.

6          THE HEARING OFFICER:   Where were you when it was

7     being processed?

8          P.O. CARTER-CLARKE:   Were you present?

9          THE WITNESS:   I was present, yes.

10         THE HEARING OFFICER:   Tell me exactly what he did.

11         THE WITNESS:   My partner put it in a yellow

12     envelope, then typed on the computer what he had then.   Then

13     put it in a white security envelope.   That's how the voucher

14     is done.

15         THE HEARING OFFICER:   He did what?

16         THE WITNESS:   He put it in a yellow envelope.   The

17     yellow envelope goes inside the clear plastic envelope.

18     Then it goes to the narcotics locker.

19         THE HEARING OFFICER:   You said you were present

20     while this was happening?

21         THE WITNESS:   Yes.

22         P.O. CARTER-CLARKE:   I do have the other officer

23     present if we need his testimony.

24         THE HEARING OFFICER:   What's the other officer's

25     name?

36

Henry Levar                    DIN # 10A4556            NYSID # 0783996Z

14

1           P.O. CARTER-CLARKE:   Perez.

2           THE HEARING OFFICER:   That's on this document?

3           P.O. CARTER-CLARKE:   Yes.

4           THE HEARING OFFICER:   So I will hold off on this.

5           Any other questions for Officer Figuereo?

6           P.O. CARTER-CLARKE:   Not at this time.

7           THE HEARING OFFICER:   Counsel?

8           MS. NAGY:   You were on patrol on 9-1-2016?

9           THE WITNESS:   Yes.

10          MS. NAGY:   You were in the 32 precinct?

11          THE WITNESS:   Confines.

12          MS. NAGY:   Were you in a vehicle?

13          THE WITNESS:   Yes.

14          MS. NAGY:   Was it unmarked?

15          THE WITNESS:   Unmarked, yes.

16          MS. NAGY:   Were you in plainclothes?

17          THE WITNESS:   Yes.

18          MS. NAGY:   You were with your partner?

19          THE WITNESS:   Yes.

20          MS. NAGY:   Were you driving?

21          THE WITNESS:   Yes.

22          MS. NAGY:   He was in the passenger seat?

23          THE WITNESS:   He was in the back.  My other partner

24  was in the front.

25          MS. NAGY:   Who is your other partner?



Henry Levar                    DIN # 10A4556            NYSID # 07839962Z

15

```
 1          THE WITNESS:   PO Carrero.

 2      MS. NAGY:   When did you first observe my client?

 3          THE WITNESS:   We observed him when he came out of

 4   his truck.

 5      MS. NAGY:   Were you driving when you first observed

 6   him?

 7          THE WITNESS:   No.  We were parked.

 8      MS. NAGY:   Where were you parked in relation to the

 9   truck?

10          THE WITNESS:   On the side street.

11      MS. NAGY:   Were you across the street from his

12   parked vehicle?

13          THE WITNESS:   No, on the side street behind.  He

14   parked on the corner.

15          THE HEARING OFFICER:   Does the street have a name?

16          THE WITNESS:   I believe that was 154.

17      MS. NAGY:   He's parked on the corner of 154th

18   Street?

19          THE WITNESS:   Correct, and I'm parked on Macombs.

20      MS. NAGY:   He gets out of his truck?

21          THE WITNESS:   Correct.

22      MS. NAGY:   And do you follow him?

23          THE WITNESS:   He starts walking up the block.  We

24   made the left on the block.

25      MS. NAGY:   He's by himself?
```



Henry Levar                        DIN # 10A4556              NYSID # 0783996Z

16

1           THE WITNESS:    No.  He met up with the other

2     codefendant.

3           MS. NAGY:    He's by himself when he gets out of the

4     truck?

5           THE WITNESS:    Yes.

6           MS. NAGY:    He was in the truck by himself?

7           THE WITNESS:    Yes.

8           MS. NAGY:    You observed him and watched him walk

9     down the street?

10          THE WITNESS:    Correct.

11          MS. NAGY:    Was he walking towards you?

12          THE WITNESS:    No.

13          MS. NAGY:    He was walking away from you?

14          THE WITNESS:    Yes.

15          MS. NAGY:    How many feet away from his truck would

16    you say your vehicle was at the time you first observed him?

17          THE WITNESS:    Probably 10-15.

18          MS. NAGY:    It was what time of day?

19          THE WITNESS:    It was nighttime.

20          MS. NAGY:    It was dark outside?

21          THE WITNESS:    Yes.

22          MS. NAGY:    How long did you watch him?

23          THE WITNESS:    About two minutes.

24          MS. NAGY:    He was walking away that entire time?

25          THE WITNESS:    Yes.