UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Levar T. Henry,

                Plaintiff,

      - against -                    17-cv-03450 (JGK) (SDA)

THE CITY OF NEW YORK, et al.,

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE**

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Attorneys for Plaintiff
Levar T. Henry

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ....................................................................................................... ii
**PRELIMINARY STATEMENT** ................................................................................................. 1
**FACTUAL BACKGROUND**...................................................................................................... 1
**ARGUMENTS** ............................................................................................................................. 4
   POINT I ...................................................................................................................................... 4
      DEFENDANT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE OF THE EXACT TYPE AND AMOUNT OF NARCOTICS RECOVERED FROM MR. HENRY .. 4
   POINT II ..................................................................................................................................... 6
      DEFENDANT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE CLAIMING THAT MEDICAL PROFESSIONALS FOUND NARCOTICS ON MR. HENRY .............. 6
   POINT III.................................................................................................................................... 8
      MR. HENRY'S PRIOR ARRESTS AND CONVICTIONS SHOULD BE EXCLUDED ... 8
   POINT IV ................................................................................................................................. 11
      MR. HENRY'S 2017 CONVICTION AND SENTENCE FOR POSSESSION OF A CONTROLLED SUBSTANCE IN THE FOURTH DEGREE ARISING FROM THE AUGUST 18, 2016 INCIDENT SHOULD BE EXCLUDED............................................. 11
   POINT V ................................................................................................................................... 12
      MR. HENRY'S CURRENT, UNRELATED CRIMINAL CHARGE, AND ALLEGED VIOLATION OF HIS SUPERVISED RELEASE, AND THE FACT THAT HE IS CURRENTLY INCARCERATED, SHOULD BE EXCLUDED ....................................... 12
   POINT VI ................................................................................................................................. 12
      EVIDENCE OF MR. HENRY'S OTHER LAWSUITS SHOULD BE EXCLUDED ...... 12
   POINT VII ................................................................................................................................ 13
      EVIDENCE OF ANY COMMENDATIONS RECEIVED BY DEFENDANTS SHOULD BE EXCLUDED ................................................................................................................ 13
   POINT VIII............................................................................................................................... 14
      MR. HENRY SHOULD BE ALLOWED TO REQUEST A SPECIFIC DOLLAR AMOUNT OF DAMAGES FOR THE INJURIES HE HAS SUFFERED.......................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Bermudez* v. *City of New York*,
  2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) ..................................................................................5

*Daniels* v. *Loizzo*,
  986 F. Supp. 245 (S.D.N.Y. 1997) ............................................................................................9

*Doe* v. *Lima*,
  2020 WL 728813 (S.D.N.Y. Feb. 13, 2020) ............................................................................10

*Greenfield* v. *City of N.Y.*,
  2000 WL 124992 (S.D.N.Y. Feb. 3, 2000) ..............................................................................13

*Hable* v. *Metro-N. Commuter R.R.*,
  2019 WL 4673564 (S.D.N.Y. Sept. 24, 2019) .........................................................................14

*Jean-Laurent* v. *Hennessy*,
  840 F. Supp. 2d 529 (E.D.N.Y. 2011) .....................................................................................11

*Lee* v. *City of Troy*,
  2021 WL 1840574 (N.D.N.Y. May 7, 2021) ...........................................................................11

*Lightfoot* v. *Union Carbide Corp.*,
  110 F.3d 898 (2d Cir. 1997) ....................................................................................................14

*McLeod* v. *Llano*,
  2021 WL 1669732 (E.D.N.Y. Apr. 28, 2021) ......................................................................9, 12

*Michelson* v. *United States*,
  335 U.S. 469 (1948) .............................................................................................................9, 12

*United States* v. *Nazzaro*,
  889 F.2d 1158 (1st Cir. 1989) ..................................................................................................13

*Nibbs* v. *Goulart*,
  822 F. Supp. 2d 339 (S.D.N.Y. 2011) .......................................................................................9

*Parsons* v. *Honeywell, Inc.*,
  929 F.2d 901 (2d Cir. 1991) ......................................................................................................7

*Raysor* v. *Port Auth. of New York & New Jersey*,
  768 F.2d 34 (2d Cir. 1985) ......................................................................................................13

*Scoma* v. *City of New York*,
   2021 WL 1784385 (E.D.N.Y. May 4, 2021) ...................................................................10, 11

*Stephen* v. *Hanley*,
   2009 WL 1471180 (E.D.N.Y. May 21, 2009) ..........................................................5, 9, 11, 12

*Triolo* v. *Nassau Cty., NY*,
   2018 WL 6268845 (E.D.N.Y. Nov. 30, 2018).......................................................................10

*Walker* v. *Schult*,
   365 F. Supp. 3d 266 (N.D.N.Y. 2019).....................................................................................10

*United States* v. *Washington*,
   106 F.3d 983 (D.C. Cir. 1997).................................................................................................13

**Statutes**

42 U.S.C. § 1983...................................................................................................................1, 11

**Rules**

Federal Rule of Evidence 402..............................................................................4, 5, 8, 9, 11, 12

Federal Rule of Evidence 403................................................................................4, 8, 9, 10, 11, 12

Federal Rule of Evidence 404(b) ......................................................................................8, 9, 13

Federal Rule of Evidence 609..............................................................................8, 9, 10, 11, 12

Federal Rule of Evidence 803........................................................................................................7

Federal Rule of Evidence 807........................................................................................................8

Plaintiff Levar T. Henry respectfully submits this motion *in limine* to preclude the introduction of certain evidence, arguments, and testimony in anticipation of trial pursuant to Rules 401, 402, 403, 404, and 609 of the Federal Rules of Evidence ("FRE").

## PRELIMINARY STATEMENT

Mr. Henry brings claims to remedy violations of his federal constitutional rights pursuant to 42 U.S.C. § 1983 as well as violations of New York State law arising out of an unnecessarily violent, and ultimately unlawful, encounter he was subjected to at the hands of several New York City Police Department Officers on August 18, 2016. Specifically, Police Officers Gary Perez, Randy Figuereo, Carlos Pimental, Carlos Thomas and Juan Carrero (collectively, "Defendants") assaulted, battered and used excessive force on Mr. Henry, causing him to suffer severe physical and mental injuries, including a laceration on the head, chronic back pain, scabbing and scarring around his rectum, and other pain and suffering.

This motion seeks to exclude from the trial: (1) the nature and quantity of narcotics Defendants purportedly recovered from Mr. Henry; (2) evidence concerning hearsay statements attributed to Harlem Hospital employees; (3) evidence of Mr. Henry's prior arrests and convictions; (4) evidence of Mr. Henry's conviction and sentence arising out of the arrest at issue; (5) evidence of a current, unrelated criminal charge against Mr. Henry; (6) evidence of Mr. Henry's prior lawsuits; and (7) evidence of Defendants' commendations. Additionally, this motion requests that Mr. Henry be permitted to advance a dollar amount of damages for the injuries he has suffered.

## FACTUAL BACKGROUND

This case arises out of Defendants' unlawful use of excessive force on Mr. Henry while arresting him on the evening of August 18, 2016.

A little after 9:00 p.m. on August 18, 2016, Mr. Henry was walking on 154th Street between Macombs and Eighth Avenue in Harlem, when he was arrested by Defendants after they purported to observe a hand-to-hand drug transaction. The officers had observed him from an unmarked car and were wearing plain clothes with their badges concealed, leading Mr. Henry to initially believe he was being robbed.

During the arrest, Defendants Carrero, Figuereo, Perez, Thomas, and Pimentel (or a combination thereof) restrained Mr. Henry by repeatedly slamming his head against a brick wall until he fell unconscious. When Mr. Henry came to, he was handcuffed and lying on the ground. While Mr. Henry lay in a fetal position, Defendants continued to punch him in the head and apply pressure to his back with their knees. In fact, Defendant Carrero suffered a "contusion" on his right hand as a result of his improper physical handling of Mr. Henry during the ensuing arrest, an injury severe enough to cause Carrero to go to the hospital that night and miss time from work.

While Mr. Henry lay there, the Defendants also forcibly touched Mr. Henry's anal region and grabbed his testicles, while shouting, "where are the drugs?"

Mr. Henry's screams of pain caused a small crowd to gather. NYPD investigators subsequently interviewed two of those eyewitnesses. One of those witnesses, Amanda Black, told an NYPD Internal Affairs Bureau ("IAB") investigator that Defendants "punched [Mr. Henry] in the throat," "wrestle[d] him to the ground," "squeeze[ed] his balls," put their hands in his buttocks with no glove, and "was just punching him" with a "knee right on his back." Another eyewitness, Mark Daniels, described Mr. Henry as screaming "for dear life, like [Defendants] were killing him."

2

Mr. Henry repeatedly requested an ambulance, and an ambulance was, in fact, called. Even though an ambulance arrived on scene, the Defendants sought (and received) authorization to conduct a strip search at the precinct, placed Mr. Henry into the back of a police car, and brought him to the precinct for the strip search—which was, in fact, a cavity search, a procedure that NYPD officers are prohibited from performing.

Mr. Henry was placed in a holding cell in order for the officers to conduct the strip search. As two Defendants have also admitted, the Defendants were aware that the surveillance cameras near the holding cell were non-operational at the time. In the holding cell, Defendants placed Mr. Henry on a bench, pulled down his pants, and conducted an unlawful cavity search. When Mr. Henry felt the officers enter him, his body instinctively jerked, and he suffered another head injury. Mr. Henry briefly lost consciousness again. When he awoke, he was covered in blood and feces. Defendant Figuereo felt sick from the smell and vomited.

An IAB investigator subsequently spoke with Edward Goldfaden, who was in a nearby holding cell. Mr. Goldfaden told the investigator that he witnessed an "officer put on gloves" and heard Mr. Henry scream "don't go in my ass" and he "knew they went inside [Mr. Henry's] rectum, because he could 'smell the shit' emanating from [his] asshole and when the officer exited the cells," and Mr. Goldfaden "observed them taking off their gloves" and "could see" it "on the gloves."

Defendants' illegal cavity search allowed them to recover drugs from Mr. Henry's rectum or anus. Defendants contemporaneously recorded in their memo books and other police records that Mr. Henry was "searched thoroughly," and the "strip" search led to a "positive" finding of crack/cocaine.

Covered in his own feces and a ripped tee shirt—and over an hour after his arrest and his pleas for medical attention—Mr. Henry was finally brought to the ambulance that was waiting outside. Mr. Henry reported to the ambulance EMTs and then to hospital physicians that he was experiencing pain, including headaches, back pain, and pain around his anus— observations corroborated in contemporaneous medical records. At the hospital, Mr. Henry was also treated for a laceration on his head.

As a result of Defendants' use of excessive force and flagrant misconduct, Mr. Henry suffered severe pain and suffering, including both physical and emotional trauma, from the physical and sexual assault inflicted on him by Defendants.

## ARGUMENTS

### POINT I
**DEFENDANT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE OF THE EXACT TYPE AND AMOUNT OF NARCOTICS RECOVERED FROM MR. HENRY**

Defendants apparently seek to introduce "Crack Cocaine in Plaintiff's Possession on August 18, 2016" and "Crack Cocaine Rock recovered from Plaintiff's Possession at Harlem Hospital on August 18, 2016" as trial exhibits. *See* Defs.' Proposed Exhibits A & C, Joint Pretrial Order, ECF No. 145. Defendants also apparently seek to introduce a NYPD property clerk invoice stating that 12 bags of crack cocaine and one rock of crack cocaine were recovered by the Defendants. *See* Defs.' Proposed Exhibit B, Joint Pretrial Order, ECF No. 145. Any physical evidence—as well as testimony on the type and quantity of the drugs recovered— should be excluded as irrelevant under Rule 402 and as unduly prejudicial under Rule 403.

As an initial matter, what exactly Defendants intend to introduce is unclear. Read literally, Defendants' proposed trial exhibits could be the actual narcotics recovered from Mr. Henry. In addition to being entirely irrelevant to the questions the jury needs to decide at trial,

4

introducing the physical drugs would be unduly prejudicial and solely for dramatic effect to appeal to the jurors' emotions.

Even if Defendants seek to merely present the *fact* that narcotics were recovered from Mr. Henry, any evidence concerning the type and quantity of narcotics recovered from Mr. Henry on the night of his arrest is irrelevant and unduly prejudicial to the central question the jury will be asked to address in this case: whether defendants used excessive force in arresting and searching Mr. Henry. Courts in the Second Circuit have squarely held that "the type and quantity of the drugs discovered as a result" of a police search "is irrelevant to establishing the reasonableness of the officers' conduct in effecting" the defendant's arrest. *Stephen* v. *Hanley*, 2009 WL 1471180, at *6 (E.D.N.Y. May 21, 2009); *Bermudez* v. *City of New York*, 2019 WL 136633, at *12 (E.D.N.Y. Jan. 8, 2019) (the Fourth Amendment excessive force analysis is "limited to the circumstances a reasonable officer would be aware of *at the time defendants employed force to arrest plaintiff* regarding: the severity of the crime; whether plaintiff posed an immediate threat to defendants; and whether plaintiffs actively attempted to evade or resist arrest" (emphasis added)). As the court held in *Stephen*, where defendants do not claim to have known the type and quantity of narcotics in the plaintiff's possession "at the time" the plaintiff engaged in the allegedly wrongful conduct, these facts "are irrelevant and inadmissible pursuant to [FRE 402] for the purpose of determining whether the officers' use of force was reasonable." *Id.*

The same is true here. The nature and quantity of any narcotics Defendants allegedly recovered from Mr. Henry are irrelevant and unduly prejudicial facts that have no bearing on whether Defendants acted reasonably in slamming and punching him during his arrest and conducting an improper search procedure of him.

5

For these reasons, the Court should exclude any physical narcotics evidence as well as any reference to the exact type and quantity of narcotics Defendants allegedly recovered from Mr. Henry.

**POINT II**

**DEFENDANT SHOULD NOT BE PERMITTED TO PRESENT EVIDENCE CLAIMING THAT MEDICAL PROFESSIONALS FOUND NARCOTICS ON MR. HENRY**

Defendants should also be barred from offering any evidence suggesting medical professionals, rather than police officers, found narcotics in Mr. Henry's rectum. In addition to seeking to introduce "Crack Cocaine Rock recovered from Plaintiff's Possession at Harlem Hospital on August 18, 2016," Defendants evidently seek to introduce as evidence a NYPD property clerk invoice purportedly prepared by an individual named "Willie Thompson" stating that one bag of crack cocaine was being "vouchered as arrest evidence, found in def. rectum by PA Scanlan of Harlem Hospital at 0030 hrs." *See* Defs.' Proposed Exhibits B & D, Joint Pretrial Order, ECF No. 145.

Defendants' proposed exhibits are inadmissible hearsay. As an initial matter, Mr. Thompson's statement is inadmissible hearsay. Defendants have not listed "Willie Thompson" as a trial witness to testify about his written statements. Thus, Mr. Thompson's statement that crack cocaine was "found in def. rectum by PA Scanlan of Harlem Hospital at 0030 hrs" is a statement by an out-of-court declarant. This property invoice also includes hearsay statements attributed to Mr. Scanlan (a physician's assistant at Harlem Hospital). Unless Mr. Scanlan testifies, any evidence that Mr. Scanlan purportedly found crack cocaine in Mr. Henry's rectum should be excluded. There is no basis for that assertion other than the statement in the property clerk invoice prepared by Mr. Thompson.

6

There are no hearsay exceptions that apply to these proposed exhibits. The business records exception, for example, applies only if: (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge;" (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" (3) "making the record was a regular practice of that activity;" (4) "all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification;" and (5) "the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness." FRE 803(6).

The property invoice by Mr. Thompson fails to meet this test. Although "entries in a police report which result from the officer's own observations and knowledge may be admitted[,] . . . *statements made by third persons under no business duty to report may not.*" *Parsons* v. *Honeywell, Inc.*, 929 F.2d 901, 907–08 (2d Cir. 1991) (quoting *United States* v. *Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983)).

Here, Defendants cannot demonstrate that Mr. Thompson had personal knowledge as to whether Mr. Scanlan found narcotics on Mr. Henry at Harlem Hospital. Further, Mr. Henry's actual medical records entirely contradict any claim that any were found in Mr. Henry's rectum by medical professionals at the hospital. *See, e.g.*, D00143 at D00146 ("The ED physician removed a bag of drugs from [Mr. Henry's] undergarments but did not find any object on rectal exam."). Thus, there is certainly a "lack of trustworthiness" to Mr. Thompson's out-of-court statements.

As a result, Defendants should be precluded from introducing their proposed Exhibit D into evidence. Relatedly, with respect to Defendants' proposed Exhibit C, Defendants

7

should be precluded from eliciting testimony of or referencing any drugs purportedly found in Mr. Henry's rectum in the hospital, unless Mr. Scanlan *himself* testifies at trial and speaks from personal recollection that he retrieved drugs from Mr. Henry's rectum.

Finally, these exhibits are also inadmissible under FRE 402 and 403. Mr. Thompson's statement that Mr. Scanlan found drugs in Mr. Henry's rectum at the hospital is highly untrustworthy, as demonstrated by contemporaneous medical records, and is thus unduly prejudicial. *See also* FRE 807 (residual hearsay exception only applies to statements with "sufficient guarantees of trustworthiness," such as with corroborative evidence). Further, such evidence is irrelevant to the key legal question at trial: whether Defendants used excessive force when arresting and searching Mr. Henry.

## POINT III
### MR. HENRY'S PRIOR ARRESTS AND CONVICTIONS SHOULD BE EXCLUDED

All evidence of or reference to Mr. Henry's criminal history prior to August 18, 2016—including all prior arrests, summons, pleas, and convictions—should be excluded as inadmissible character evidence under Federal Rule of Evidence 404(b), as well as irrelevant under Federal Rule of Evidence 402, and unduly prejudicial under Federal Rule of Evidence 403. Likewise, any such evidence should be excluded as impeachment evidence against Mr. Henry under Federal Rule of Evidence 609.

*First*, Defendants should be precluded from introducing any evidence of prior arrests or charges that did not result in a conviction. This is impermissible character evidence that is not relevant to any issue in this case. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). Any such evidence is

8

also irrelevant and unduly prejudicial under Federal Rules of Evidence 402 and 403. *See, e.g.*, *Stephen*, 2009 WL 1471180, at *8 (prior charges were inadmissible under Rule 402 as irrelevant and inadmissible under Rule 403 as prejudicial, where defendants proffered charges "solely to demonstrate [plaintiff's] bad character; however, his character is not at issue in this case"); *Daniels* v. *Loizzo*, 986 F. Supp. 245, 248 (S.D.N.Y. 1997) (defendants in Section 1983 conceding inadmissibility of evidence about Plaintiff's arrests that did not result in convictions).

For similar reasons, evidence of arrests that did not lead to convictions may not be admitted to attack Mr. Henry's character for truthfulness under Rule 609. *See Michelson* v. *United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness."); *McLeod* v. *Llano*, 2021 WL 1669732, at *7 (E.D.N.Y. Apr. 28, 2021) ("By its plain terms, Rule 609 does not apply to arrests that do not lead to convictions.").

*Second*, Defendants should be precluded from introducing any evidence of any of Mr. Henry's prior convictions. Again, this is impermissible character evidence that is not relevant to any issue in the case, and any such evidence should excluded under Rules 402, 403, and 404. *See, e.g.*, *Nibbs* v. *Goulart*, 822 F. Supp. 2d 339, 343 (S.D.N.Y. 2011) (holding that evidence of prior drug convictions to be inadmissible, noting that "such evidence would suggest to the jury that [the plaintiff] was likely engaged in the sale of narcotics at the time of his arrest because he had been engaged in the sale of narcotics in the past" and that potential prejudice outweighed any probative value); *Daniels*, 986 F. Supp. at 248 ("[T]he proffer of evidence [of prior convictions] amounts to nothing more than a veiled attempt to do what Rule 404(b) prohibits—introduce bad acts evidence to show a propensity to commit such acts.").

9

Nor should Mr. Henry's prior convictions be admissible for impeachment purposes. Under Rule 609, evidence of a criminal conviction can be used for impeachment in a civil case if the crime required proving a "dishonest act or false statement," or if the crime is a felony and would otherwise be admissible under Rule 403. *See* FRE 609(a)(1)(A) & (a)(2).

Here, none of Mr. Henry's prior convictions involve a "dishonest act or false statement." *See* FRE 609(a)(2). Nor would any of Mr. Henry's prior convictions be admissible under Rule 403. None of these convictions are relevant to any issue in this case, and any conceivable probative value is substantially outweighed by the danger of prejudicing or misleading the jury. *See Walker* v. *Schult*, 365 F. Supp. 3d 266, 282 (N.D.N.Y. 2019) (excluding evidence of a prior conviction for drug conspiracy where any probative value "would be substantially outweighed by the prejudicial effect this kind of evidence would have"); *Doe* v. *Lima*, 2020 WL 728813, at *5-6 (S.D.N.Y. Feb. 13, 2020) (excluding evidence of prior convictions where they "d[id] not bear on the offender's character for veracity"); *Scoma* v. *City of New York*, 2021 WL 1784385, at *11 (E.D.N.Y. May 4, 2021) (excluding evidence of prior convictions).

Further, much of Mr. Henry's criminal history should also be excluded as too remote in time to have any probative value. Under Rule 609(b), evidence of convictions that occurred more than ten years ago are only admissible if: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Here, the Defendants have not provided any such written notice. Nor does the probative value (if any) substantially outweigh the prejudicial effect. *See, e.g.*, *Triolo* v. *Nassau Cty., NY*, 2018 WL 6268845, at *2 (E.D.N.Y. Nov. 30, 2018)

10

(precluding admission of prior convictions because Defendants had not given any notice of their intent to use the evidence at trial); *Lee* v. *City of Troy*, 2021 WL 1840574, at *1 (N.D.N.Y. May 7, 2021) (same); *Scoma*, 2021 WL 1784385, at *11 ("The Second Circuit has recognized that Congress intended that convictions more than ten years old be admitted 'very rarely and only in exceptional circumstances.'").

## POINT IV

### MR. HENRY'S 2017 CONVICTION AND SENTENCE FOR POSSESSION OF A CONTROLLED SUBSTANCE IN THE FOURTH DEGREE ARISING FROM THE AUGUST 18, 2016 INCIDENT SHOULD BE EXCLUDED

On February 21, 2017, Mr. Henry was convicted, after a guilty plea, of possession of a controlled substance in the fourth degree arising from the August 18, 2016 incident. Mr. Henry was sentenced to 42 months of imprisonment, based in part of a prior felony conviction. Evidence of or reference to either his ultimate conviction or sentence based on the August 18, 2016 incident should be excluded under Rules 402, 403, and 609.

In Section 1983 excessive force actions, the conviction following the arrest at issue is "irrelevant to whether the officers' actions were objectively reasonable before and during the course of the incident at issue." *Stephen*, 2009 WL 1471180, at *4 ("If probable cause to arrest is present, the actual guilt or innocence of the arrestee is irrelevant to the amount of force that may be used." (quotation marks omitted)); *Jean-Laurent* v. *Hennessy*, 840 F. Supp. 2d 529, 539-40 (E.D.N.Y. 2011) (evidence of plaintiff's *conviction* for possession of drugs arising from the arrest was not relevant to an unreasonable strip search claim brought under Section 1983). Mr. Henry's subsequent conviction and sentence "does not provide insight into whether he posed a threat to the safety of the defendants or attempted to evade arrest, and, thus, whether the defendants' use of force was reasonable." *Stephen*, 2009 WL 1471180, at *4.

11

Moreover, under Rule 609(a)(1), any probative value of the use of the conviction for impeachment purposes is outweighed by its prejudicial effect. *See, e.g.*, *Stephen*, 2009 WL 1471180, at *4; *McLeod* v. *Llano*, 2021 WL 1669732, at *7 (E.D.N.Y. Apr. 28, 2021) ("Admitting any mention of plaintiff's guilty plea [of disorderly conduct]. . . would be misleading to the jury and unfairly prejudicial" in excessive force case).

## POINT V
### MR. HENRY'S CURRENT, UNRELATED CRIMINAL CHARGE, AND ALLEGED VIOLATION OF HIS SUPERVISED RELEASE, AND THE FACT THAT HE IS CURRENTLY INCARCERATED, SHOULD BE EXCLUDED

Mr. Henry is currently incarcerated in Westchester County Jail on an unrelated criminal drug charge and, relatedly, for the alleged violation of the terms of his supervised release based on the charge. For the same reasons discussed above, the current criminal charge, the alleged violation of his supervised release, and the fact of his current incarceration should be excluded as impermissible character evidence under 404(b). Further, any such evidence should be excluded as irrelevant and unduly prejudicial under Rules 402 and 403. *See, e.g.*, *Stephen*, 2009 WL 1471180 at *7-8 (unproven charges carry "little probative value" and have the "potential to prejudice the jury's perception of the facts at issue")

Further, any evidence of or reference to this charge or alleged violation should be excluded for purposes of impeachment, because Mr. Henry's "prior arrests do not bear on his 'character for truthfulness.'" *Id*.; *see also Michelson*, 335 U.S. at 482.

## POINT VI
### EVIDENCE OF MR. HENRY'S OTHER LAWSUITS SHOULD BE EXCLUDED

Evidence of prior lawsuits or complaints filed by Mr. Henry against the City, the State, and/or other officers related to other, separate incidents should not be admitted for any purpose in this case. Any such reference is irrelevant, highly prejudicial, may cause juror

12

confusion, and has no probative value in the instant action. Should Mr. Henry's prior lawsuits or complaints be admitted, the jury may draw the impermissible inference that Mr. Henry has a propensity for and history of police contact, and filing complaints and lawsuits against the City.

"[T]he Second Circuit is clear that under Rule 404(b), evidence of prior litigation cannot be admitted solely for the purpose of proving that a plaintiff has a character trait for litigiousness and acted in conformity with that trait in the present lawsuit." *Greenfield* v. *City of N.Y.*, 2000 WL 124992 at *12 (S.D.N.Y. Feb. 3, 2000); *see also Raysor* v. *Port Auth. of New York & New Jersey*, 768 F.2d 34, 40 (2d Cir. 1985) (instructing district court to avoid eliciting testimony on plaintiff's numerous *pro se* lawsuits, because while "litigiousness may have some slight probative value, . . . that value is outweighed by the substantial danger of jury bias against the chronic litigant.").

### POINT VII
### EVIDENCE OF ANY COMMENDATIONS RECEIVED BY DEFENDANTS SHOULD BE EXCLUDED

Evidence of Defendants' awards, if any, in the form of, for example, resumes and anecdotal proof of commendations, as "character evidence" should be excluded. "[T]he traits which they purport to show—bravery, attention to duty, perhaps community spirit—[are] hardly 'pertinent' to [the present case]." *United States* v. *Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (excluding evidence of Officers' awards and commendations at trial). *See also*, *United States* v. *Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) ("[Officer's] 'dedication, aggressiveness and assertiveness' in investigating drug dealing and carjacking is neither 'pertinent' to nor an 'essential element' of his supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged.").

# POINT VIII

## MR. HENRY SHOULD BE ALLOWED TO REQUEST A SPECIFIC DOLLAR AMOUNT OF DAMAGES FOR THE INJURIES HE HAS SUFFERED

In the Second Circuit, there is no "*per se* rule about the propriety of suggested damage amounts." *Lightfoot* v. *Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). The decision of whether to permit a request for a specific dollar amount "is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Id.* Because there is no *per se* rule against suggesting a dollar amount, Mr. Henry should not be precluded from advancing a figure. *Hable* v. *Metro-N. Commuter R.R.,* 2019 WL 4673564, at *6 (S.D.N.Y. Sept. 24, 2019) ("[G]iven that the lack of a *per se* rule about the propriety of such suggestions, the Court sees no reason—at this juncture—to prohibit Plaintiff from presenting a suggested figure for past and future economic loss. If, during trial, it becomes apparent that a suggested amount will be unduly prejudicial, the Court will set appropriate limits.").

Dated: New York, New York
September 3, 2021

        PAUL, WEISS, RIFKIND, WHARTON &
          GARRISON LLP

By: /s/ *Arianna Markel*
     Arianna Markel

Gregory F. Laufer
Arianna Markel
Ameya S. Ananth
Tamar Holoshitz
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
amarkel@paulweiss.com

*Attorneys for Plaintiff*
  *Levar T. Henry*

15